Defendant was convicted of robbery in the first degree and sentenced to life without parole.
The State's evidence established that at 7:30 P.M. on July 22, 1981, two white males entered the Carter Hill Drugstore in Montgomery, Alabama, and, at gunpoint, robbed the pharmacist of narcotics and $90 in cash. Three eye-witnesses testified for the prosecution: Mr. Alan Rosenthal, the pharmacist; Mr. William Sanders, the deliveryman; and Mrs. Marsha Jackson, another employee.
At trial, neither Mr. Rosenthal nor Mr. Sanders was able to positively identify the defendant as one of the robbers. Rosenthal said the defendant was "similar" and had "a very close resemblance" to one of the robbers. Sanders stated that the defendant "looked just like" one of the robbers adding that he was "pretty sure it's him."
Mrs. Jackson, on the other hand, pointed out the defendant at trial and testified that she was sure he was one of the men who had participated in the robbery. She said *Page 333 
that when the two men entered the store, they told her they were looking for a birthday card, and she walked with them over to the card counter. The taller man then walked back to the pharmacy, but the shorter one, whom she positively identified as the defendant, stayed with her.
After Mrs. Jackson picked out a card and handed it to him, the defendant put his arm around her waist and led her back to the office, telling her to be quiet and no one would be hurt. At one point, a customer entered the store and the defendant went to the front to wait on him. Then, according to Mrs. Jackson, the defendant returned to the office and taped the hands and feet of the three store employees while his companion loaded drugs into a sack.
Mrs. Jackson also recalled that she had seen the defendant earlier the same day. She testified that about noon on the day of the robbery, he came into the drugstore with a female companion and another individual whom she identified as James Meeks, who was also tried for robbery arising out of the same incident.
Ms. Rhonda Thornton testified that on July 22, 1981, she, James Meeks, and the defendant went to the Carter Hill Drugstore about lunchtime. As they left, the defendant stated that the drugstore "would be an easy lick" and "easy to do around closing time when there was just three people in there." Ms. Thornton said that later the same evening James Meeks and the defendant came to her apartment, told her that they had just robbed Carter Hill Drugstore, and showed her the drugs they had taken.
Corporal Ronnie Davis of the Montgomery Police Department testified that on October 1, 1981, he advised the defendant of his Miranda rights and obtained from him a signed waiver of rights form. According to Davis, the defendant then orally admitted his participation in the drugstore robbery, telling Davis that he had waited on a customer who came into the store. Davis stated that the defendant "even laughed about charging the customer sales tax."
On cross-examination, Davis conceded that he had not reduced the defendant's oral statement to writing and acknowledged that he had only the following notation of any statement made by the defendant:
 "Bill, have I advised you of your rights, and told you that you didn't have to talk to me if you didn't want to? Yes.
 "Do you want to tell me about the Carterhill Drugs robbery that you were involved in? No, I'll just wait until a later date.
 "Q. Is it anything else that you would like to add to this statement at this time?
"A. No."
Davis explained that, as he started the typewritten statement, the defendant asked whether the codefendant Meeks had made a written statement. When the officer responded that Meeks had not given a written statement, the defendant stated that he did not want to say anything further. At that point, Davis discontinued the questioning.
 I
The defendant claims that the trial court erroneously denied portions of his "Motion for Discovery" inquiring about the criminal records of, or the immunity promised to, any of the State's witnesses. He also contends that the court erred by not granting his pre-trial "Petition for Transcript for Indigent Defendant," in which he sought a copy of the trial transcript of his co-defendant James Meeks.
Both requests were properly denied. The "Petition for Transcript for Indigent Defendant" was a discovery device, as indicted by counsel's statement in brief:
 "At the trial of James Meeks, the State called witnesses to the stand against Mr. Meeks which were in fact the same witnesses called against Appellant at his trial. Appellant requested a transcript of said proceedings in order to assist counsel for Appellant in preparation of the case against him."
Section 12-22-190, Ala. Code 1975, authorizes a free transcript only for a convicted *Page 334 
defendant for purposes of appeal. See Mayola v. State,344 So.2d 818 (Ala.Cr.App.), cert. denied, 344 So.2d 822 (Ala. 1977).
There is no constitutional right to discovery in a criminal case. Brown v. State, 401 So.2d 213 (Ala.Cr.App.), cert.denied, 401 So.2d 218 (Ala. 1981). Furthermore, it is within the trial court's discretion to deny disclosure of material which might impeach the credibility of the State's witnesses,see Oliver v. State, 399 So.2d 941 (Ala.Cr.App. 1981); Mack v.State, 375 So.2d 476 (Ala.Cr.App. 1978), affirmed,375 So.2d 504 (Ala. 1979), vacated on other grounds, 448 U.S. 903,100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980). The defendant has shown no abuse of discretion here.
 II
The defendant also contends that the in-court identifications of him made by three of the State's witnesses should have been suppressed because they were tainted by prior out-of-court identifications. He claims that the extra-judicial identifications resulted from a suggestive photographic array.
Initially, we note that the photographs shown to the three eyewitnesses were not introduced into evidence and it is impossible for us to determine, based upon the testimony appearing in the record, whether the photographic array was unduly suggestive. Further, we note that only one of the eyewitnesses, Mrs. Jackson, made a positive in-court identification of the defendant. Thus, it is immaterial whether the other two eyewitnesses — Mr. Rosenthal and Mr. Sanders — were presented with suggestive out-of-court photographs, since neither was able to identify the defendant at trial.
 "[C]onvictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968) (emphasis added).
However, even if we assume that the photographic array shown to Mrs. Jackson was impermissibly suggestive, it is clear that her in-court identification of the defendant had a basis independent of the photos she was shown. See Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See alsoManson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243,53 L.Ed.2d 140 (1977); Flowers v. State, 402 So.2d 1088 (Ala.Cr.App.),cert. denied, 402 So.2d 1094 (Ala. 1981); Carter v. State,406 So.2d 1076 (Ala.Cr.App. 1981).
Applying the five factors set out in Neil v. Biggers, supra, it is clear that:
(1) Mrs. Jackson had ample opportunity to view the defendant during the robbery. She led him to the card counter, handed him a birthday card, and was escorted by him back to the pharmacy.
(2) Mrs. Jackson's attentiveness to the defendant was evidenced by her ability to recall that he had come into the drugstore earlier that same day, and her recollection on this point was corroborated by the testimony of Rhonda Thornton.
(3) The description Mrs. Jackson gave investigating officers related to the defendant's height and the fact that he was wearing a cap on the day of the robbery, items further corroborated by the testimony of Rhonda Thornton.
(4) During the photographic lineup, Mrs. Jackson picked the defendant's photograph as one of two pictures resembling the man who had robbed her, stating that the people in the two photos were very similar and she would have to "see them in person."
(5) The time between the robbery and the photographic lineup was relatively short, three and one-half weeks.
We conclude that the identification testimony was reliable and the defendant's motion to suppress was correctly denied.
 III
Finally, the defendant argues that testimony regarding the statement he made to *Page 335 
officer Davis was erroneously admitted because the alleged confession was "untrustworthy," presumedly a reference to the fact that the police officer did not reduce the oral statement to writing.
Once the proper voluntariness and Miranda predicates are established, as here, the fact that the incriminating statement was not recorded in some manner affects only its weight and not its admissibility. Beckham v. State, 389 So.2d 573 (Ala.Cr.App. 1980), and authorities cited therein. Corporal Davis's account of the defendant's statement was, therefore, properly admitted and his credibility properly left to the jury to decide. SeeSparks v. State, 376 So.2d 834 (Ala.Cr.App. 1979).
We have examined the issues presented on appeal and have found no error. The judgment of conviction by the Montgomery Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.