On August 14, 1986, Sam Piki Enterprises, Inc., David A. Harvey, and Henry W. Freeman sued Malb's Associates, Inc., d/b/a Mata's Greek Pizza Grinders; William Rodopoulos; and Mata Rodopoulos, alleging fraud and deceit and breach of contract arising out of the sale of a franchise. In their answer, the defendants denied the allegations of the complaint and raised the following defenses: failure to state a claim upon which relief may be granted, waiver, estoppel, and the statute of limitations. Defendant Malb's Associates counterclaimed, alleging breach of contract and money due on an open account.
On April 4, 1988, the defendants filed a motion for partial summary judgment as to the fraud claim. The trial court denied the motion on September 16, 1988.
On September 8, 1988, the plaintiffs filed an amended complaint, adding new counts alleging "false representation" and requesting attorney fees. The defendants filed a motion to strike the amendment on the grounds that the plaintiffs had not obtained leave of court, that the statutory period of limitations for bringing a new cause of action had expired, that the allegations would not support a claim of fraud, that attorney fees were not recoverable, that the claims in the amended complaint were barred by laches, and that the defendants would be prejudiced if the amendment were allowed, because discovery had been completed. The trial court denied the motion on November 10, 1988.
On February 22, 1989, the defendants filed a motion to reconsider the denial of the motion for partial summary judgment and the denial of the motion to strike. The defendants requested a hearing on this motion. The motion was set for a hearing on June 7, 1989; the record does not reveal that this motion was heard by or ruled on by the trial court.
On April 21, 1989, the plaintiffs again amended their complaint, alleging that Malb's Associates was the alter ego of William and Mata Rodopoulos and demanding *Page 663 
judgment against those individuals for all matters complained of against the corporation. The defendants filed a motion to strike that amendment on the grounds that plaintiffs had not obtained leave of court, that the statutory period of limitations had expired, and that allowing the amendment would unduly complicate the case. The trial court denied the motion on May 8, 1989.
The case was tried before a jury on November 13, 1989. No evidence was presented on the breach of contract claims, and the court's charge to the jury made no mention of the breach of contract claims. Only the fraud issues and the open account issue were submitted to the jury. The jury returned verdicts in the amount of $170,000 for the plaintiffs on those issues.[1] The trial court entered a judgment pursuant to the jury verdicts on November 17, 1989.
On December 14, 1989, the defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. On January 10, 1990, the trial court denied the motion. From the denial of their motion for judgment notwithstanding the verdict, the defendants appeal.
The defendants first argue that the complaint, as originally filed, failed to state a cause of action in fraud. Specifically, the defendants contend that the plaintiffs failed to allege a misrepresentation of an existing material fact upon which the plaintiffs relied to their detriment and that the representations alleged in the complaint to be false are merely expressions of opinion.
The fraud count of the plaintiffs' original complaint reads as follows:
 "1) The Defendants prior to the sale of the franchise furnished to the Plaintiffs and their bankers a written projection of the business that the Plaintiffs could expect to earn from the franchise at the Auburn, Alabama, store. The projection stated that the Plaintiffs could expect to gross approximately $12,000.00 a week in the Auburn, Alabama, store. Moreover, the Plaintiffs advised the Defendants that they figured under the projection of costs and expenses furnished to them by the Defendants that the Plaintiffs in order to break even would need to gross at least $7,000.00 a week. The Plaintiffs told the Defendant William Rodopoulos that if there was any doubt in Mr. Rodopoulos's mind that the Auburn, Alabama, store would not make that figure the Plaintiffs would not go through with the franchise. The Defendant William Rodopoulos assured the Plaintiffs that this gross figure would be no problem.
 "2) Based on this representation and other representations concerning the earning capacity of the store the Plaintiffs agreed to purchase Carmine's Pizza in Auburn, Alabama, to operate the franchise and agreed to purchase the franchise. The Plaintiffs mortgaged their homes and borrowed large sums of money to purchase the business. Moreover, the Plaintiffs invested great sums of money and time in trying to make the store work. The Plaintiff Henry W. Freeman quit his job to work full time at the Auburn, Alabama, store.
 "3) The statements relative to the amount of income expected at the Auburn, Alabama, store were false and the Defendants knew they were false or grossly exaggerated or the Defendants made such projections recklessly with the intent that the Plaintiffs would rely thereon.
 "4) The Plaintiffs opened their store in Auburn, Alabama, sometime in September of 1984 and operated it until January of 1986. The Plaintiffs closed the business because they were continuing to lose money. The Plaintiffs continued to operate the business up until it closed based on the assurances of the Defendants that the business would get better and that the gross figures of earnings that had been given to them would come. The Plaintiffs' store in Auburn, Alabama, never approximated the figures given them by the Defendants. *Page 664 
 "5) The Defendants were under a duty to disclose to the Plaintiffs the facts upon which they based their earning claims. The Defendants exaggerated the earnings claims and failed to disclose the factual basis of these earnings claims.
 "6) The foregoing constitutes fraud and deceit in violation of Sections 6-5-100, 6-5-101, 6-5-102, 6-5-103, and 6-5-104 of the Code of Alabama.
 "7) The Plaintiffs have been damaged as a result of the fraud and deceit of the Defendants. The Plaintiffs have lost large sums of money; the business at [the] Auburn, Alabama, store failed; Plaintiffs have been embarrassed and humiliated by the failure of the business at the Auburn store; Plaintiffs have been caused mental and emotional distress. Moreover, the Plaintiffs are entitled to punitive damages as a result of the willful and/or intentional and/or reckless representation or secretion of material facts specified above."
Upon review of the applicable law, we conclude that the complaint states a cause of action for fraud. See Ala. Code 1975, § 6-5-101 et seq.
The defendants next contend that the trial court erred in not dismissing the plaintiffs' first amendment to their complaint because the statutory period of limitations as to the matters alleged therein had expired. The defendants argue that the plaintiffs, through an amendment filed after the statutory period of limitations for the cause of action had expired, have alleged a new cause of action based on new facts and that, therefore, the amendment does not relate back.
In McCullough v. Warfield, 523 So.2d 374 (Ala. 1988), this Court, quoting Cooper v. Thomas, 456 So.2d 280, 283 (Ala. 1984), stated:
 "'Thus, where the plaintiff attempts through amendment to aver new facts or a new cause of action, beyond the statute of limitations period, which were not included in the original complaint, the amendment is barred. However, where the amendment is merely a more definite statement, or refinement, of a cause of action set out in the original complaint, the amendment relates back to the original complaint in accordance with A.R.Civ.P. 15(c).' "
523 So.2d at 375.
In their first amendment, the plaintiffs added the following paragraphs to the fraud count of their original complaint:
 "8) The Defendants were under a duty to disclose to the Plaintiffs the fact that the only two stores that the Defendants operated had grossed between $4,000 and $5,000 a week. The Plaintiffs had no prior experience in the restaurant business and were relying totally on the judgment of the Plaintiffs. Moreover, based on the special circumstances and the facts of this case and the relationship of the parties, and the requirements specified by the Federal Trade Commission Regulations 16 CFR Part 436 [sic]. The Defendants were under a duty to disclose these earning figures to the Plaintiffs. Had the Defendants disclosed these earning figures to the Plaintiffs, the Plaintiffs would not have purchased the franchise.
 "9) The Plaintiffs opened their Auburn store for business on or about September 6, 1984. The Plaintiffs operated their store in Auburn until January of 1986 when it closed due to its failure. During the year 1985, the Plaintiffs continued to borrow money in attempts to salvage the business. The Defendants gave them assurances that the business would turn around. However, the business did not turn around. The Plaintiffs filed suit in August of 1986. The Legislature, effective January 17, 1985, changed the respective statute of limitations for fraud from 1 year to 2 years. The Plaintiffs have brought this action well within the 2 year statute of limitations. The Plaintiffs' cause of action on the fraud count had not accrued until after the effective date of the amendment made by the Legislature in 1985."
The plaintiffs also added two counts based on "false representation" and one count requesting attorney fees. *Page 665 
We find that this amendment is merely a more definite statement, or a refinement, of the fraud cause of action set out in the original complaint. The amendment, therefore, relates back to the original complaint, and the trial court correctly allowed the amendment.
The defendants' next contention is that the trial court erred in permitting the plaintiffs to present their claim that the defendants violated certain regulations of the Federal Trade Commission ("FTC"). The defendants argue that the trial court should have dismissed that part of the first amended complaint that alleged violations of FTC regulations and should not have permitted the jury to consider the regulations as setting a standard of conduct in regard to fraud.
The trial court's charge to the jury concerning the FTC regulations was as follows:
 "[T]hrough the course of this trial, there has been reference to regulations promulgated by the Federal Trade Commission. I charge you that you may consider those regulations in determining what duty, if any, the defendants owed the plaintiffs to disclose [their] earnings relative to the operation of [their] business."
In Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala. 1980), and Knight v. Burns, Kirkley Williams Constr. Co.,331 So.2d 651 (Ala. 1976), this Court held that the Occupational Safety and Health Act standards were admissible regarding the standard of care to be followed in a negligence case. OsborneTruck Lines, Inc. v. Langston, 454 So.2d 1317 (Ala. 1984), cited Industrial Tile, Inc. and Knight and held that "[b]y analogy, an instruction that the jury could consider the Motor Carrier Safety Regulations in determining defendants' standard of care [in a negligence case] would have been appropriate."
By further analogy, we now hold that FTC regulations are admissible in this fraud case with regard to the defendants' duty to disclose. The trial court correctly allowed the amendment to the complaint concerning the duty owed by the defendants under the FTC regulations and correctly permitted the jury to consider the FTC regulations in determining the duty owed by the defendants.
The defendants also argue that there was no evidence of a violation of the FTC regulations at the time of the plaintiffs' reliance on the defendants' misrepresentations and failure to disclose. The defendants argue that the plaintiffs' reliance, if any, occurred in June 1984, when they purchased an existing pizza restaurant. They specifically argue that because the franchise agreement was not signed until August or September 1984, the defendants were not in violation of the FTC regulations at the time the reliance occurred.
The regulation at 16 C.F.R. § 436.1 (1990) reads, in pertinent part, as follows:
 "In connection with the advertising, offering, licensing, contracting, sale, or other promotion in or affecting commerce, as 'commerce' is defined in the Federal Trade Commission Act, of any franchise, or any relationship which is represented either orally or in writing to be a franchise, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for any franchisor or franchise broker:
 "(a) To fail to furnish any prospective franchisee with the following information accurately, clearly, and concisely stated, in a legible, written document at the earlier of the 'time for making of disclosures' or the first 'personal meeting':
". . . .
 "(20)(i) A balance sheet (statement of financial position) for the franchisor for the most recent fiscal year, and an income statement (statement of result of operations) and statement of changes in financial position for the franchisor for the most recent 3 fiscal years."
"Personal meeting" is defined at 16 C.F.R. § 436.2(o) as a "face-to-face meeting between a franchisor or franchise broker (or any agent, representative, or employee thereof) and a prospective franchisee which is held for the purpose of discussing the sale or possible sale of a franchise." *Page 666 
The record reveals that the initial discussions concerning the franchise took place sometime in 1983, prior to the plaintiffs' purchase of the existing restaurant. Using16 C.F.R. § 436.1 as the standard of care, we find that there was sufficient evidence from which the jury could conclude that the defendants breached their duty to the plaintiffs at the time of the plaintiffs' reliance.
The defendants also contend that the trial court erred in submitting the fraud issues to the jury because, they say, the reason for and the extent of the plaintiffs' loss was speculative and because, they say, the plaintiffs' reliance on the fraud was not "reasonable."[2]
In Shades Ridge Holding Co. v. Cobbs, Allen Hall MortgageCo., 390 So.2d 601 (Ala. 1980), this Court stated:
 "[I]n cases of intentional or aggravated acts there is an extended liability and the rules of proximate causation are more liberally applied than would be justified in negligence cases. This is especially true in cases of fraud where proximate cause is often articulated as a requirement of reasonable reliance where but for the misrepresentation or concealment it is likely the plaintiff would not have acted in the transaction in question. In those instances where the defendant is found to have acted intentionally it is proper that a more remote causation result in liability than would be true in negligence cases. The policy to be followed is that liability should fall on the wrongdoer rather than to permit the victim to go uncompensated."
390 So.2d at 607.
In Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala. 1987), we further explained the proximate cause standard and standards applicable to damages awards in fraud cases. QuotingP S Business Machines, Inc. v. Olympia U.S.A., Inc.,707 F.2d 1321, 1323-24 (11th Cir. 1983), we stated:
 " 'In Alabama, one injured by fraudulent representation is entitled to recover all damages which were in the contemplation of the parties or which were either necessary or natural and proximate consequences of the fraud. Ala. Code § 6-5-101 (1975); Fidelity and Casualty Co. v. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669
(1943); Jackson Co. v. Faulkner, 55 Ala. App. 354, 315 So.2d 591 (1975). . . . Lost profits may be included in properly recoverable damages in a fraud action, but the jury must also decide if evidence shows that other damages have been incurred and that they proximately resulted from the defendant's actions.' "
506 So.2d at 334 (emphasis added). In Liberty Nat'l Life Ins.Co. v. Sherrill, 551 So.2d 272, 273 (Ala. 1989), we said that "whether the reliance was reasonable or justified was for the trier of fact."
The reason for the plaintiffs' loss was a question for the jury, as was the extent of that loss and the justification for the plaintiffs' reliance. The trial court correctly submitted the fraud issues to the jury.
Finally, the contention of Malb's Associates that the trial court erred in failing to direct a verdict in its favor on its counter-claim is without merit. The evidence of record is sufficient to support the trial court's denial of the directed verdict motion and its submission of the counterclaim to the jury.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
MADDOX, JONES, ALMON and ADAMS, JJ., concur.
[1] The defendants allege in their brief that the breach of contract claims were dismissed; however, we find no entry of dismissal in the record. Notwithstanding, on the authority ofPoston v. Gaddis, 372 So.2d 1099 (Ala. 1979), we will consider the judgment final as to all issues.
[2] See Hickox v. Stover, 551 So.2d 259 (Ala. 1989), wherein this Court spoke of "justifiable" rather than "reasonable" reliance. *Page 667