894 So.2d 764 (2003)
Ex parte Albert MACK III.
(In re State of Alabama
v.
Albert Mack III).
CR-02-0341.
Court of Criminal Appeals of Alabama.
April 25, 2003.
Order Overruling Applications for Rehearing August 29, 2003.
Certiorari Denied January 16, 2004.
Certiorari Quashed August 27, 2004
*766 Sanjay K. Chhablani, Atlanta, Georgia, for petitioner.
William H. Pryor, Jr., atty. gen., David A. Clark and J. Clayton Crenshaw, asst. attys. gen., for respondent.
Alabama Supreme Court 1022107.
Certiorari Denied (as to Albert Mack) January 16, 2004.
Certiorari Quashed (as to the State) August 27, 2004
Alabama Supreme Court 1022069.
PER CURIAM.
The petitioner, Albert Mack III, filed this petition for a writ of mandamus directing Judge Charles Malone to grant his discovery motion related to his Rule 32, Ala.R.Crim.P., petition attacking his capital-murder conviction and death sentence. Mack was convicted of murdering Patrick Cory Holman during the course of a robbery, an offense defined as capital by § 13A-5-40(a)(2), Ala.Code 1975. The jury recommended, by a vote of 10 to 2, that Mack be sentenced to death. The trial court accepted the jury's recommendation and sentenced Holman to death. His conviction and sentence were affirmed on direct appeal. See Mack v. State, 736 So.2d 664 (Ala.Crim.App.1998), aff'd, 736 So.2d 681 (Ala.), cert. denied, 528 U.S. 1006, 120 S.Ct. 502, 145 L.Ed.2d 388 (1999). This Court issued a certificate of judgment in June 1999.
In August 2000, Mack filed a Rule 32, Ala.R.Crim.P., petition for postconviction relief. Mack filed three amended petitions in December 2000, February 2001, and July 2001.[1] In September 2000, Mack filed his first discovery motion requesting demographic information of the grand jury and venire pool from which the grand jury that indicted Mack was chosen and also all information and exhibits furnished to that grand jury. The initial discovery motion was denied at a status conference. Mack then requested the demographic information on the race and gender of grand and petit jurors in Tuscaloosa County from 1978 through 1995.[2] The trial court denied the motion; however, Judge Malone gave Mack permission to file additional arguments in support of the motion. In July 2001, Mack filed a third amended petition *767 and a motion to reconsider the denial of the discovery motion as it pertained to the demographic information of the jurors. The trial court denied the motion to reconsider. In a separate motion, Mack also requested discovery of files of 29 different law-enforcement agencies. Mack filed a motion to clarify his request and lowered the number of agencies to 17. On October 22, 2002, Judge Malone denied this motion. Mack filed this mandamus petition on November 25, 2002. We stayed all action in the circuit court pending the disposition of this mandamus petition.
Mack argues that Judge Malone erred in denying his request for discovery of the race and gender of the grand and petit jurors in Tuscaloosa County from 1978 through 1995. He asserts that this information is essential to prove his claim that his trial counsel's performance was deficient in failing to effectively challenge the repeated underrepresentation of African-Americans on grand and petit juries in Tuscaloosa County. This information, he further argues, is necessary to prove his claim that appellate counsel's performance was deficient in failing to raise this issue on appeal.
The State contends that we should dismiss this petition because, it says, Mack failed to file it within the presumptively reasonable time provided in Rule 21(a), Ala.R.App.P.  42 days. The State asserts that the motion for discovery of the grand jury information was denied in August 22, 2001; however, this mandamus petition was not filed until November 22, 2002.[3] In its response to the State's answer, Mack argues that the order denying this discovery motion was not mailed to him until October 22, 2002, and that this petition was filed within 42 days of his receipt of the ruling on that motion. Mack further asserts that he contacted the circuit clerk's office and was informed that there was no date indicating when this discovery motion was denied and that the only indication of when the order was issued was the date on the copy of the order itself  October 22, 2002. The allegations made in Mack's reply to the State's motion are not refuted and appear to be supported by the exhibits filed with this Court. It appears that the trial court's denial of the motion at the hearing was not its final ruling. The trial court gave Mack permission to file additional arguments in support of the motion. It appears that this petition is timely.
The State next argues that Mack is not entitled to relief because, it says, his claims of ineffective assistance of counsel that are the basis for the discovery motions were raised only in the third amended petition, which was filed outside of the two-year limitations period set in Rule 32.2(c), Ala.R.Crim.P.[4] Mack counters this argument by asserting that the ineffective-assistance claims relate back to the claims raised in his second amended petition.
Neither the State nor Mack has filed a copy of the second amended petition so we do not know what issues were raised in that petition. Mack quotes from certain portions of the petition, and the quoted portions appear to support his assertion that the ineffective-assistance-of-counsel claims related back to a previous timely filed petition. Because Mack has submitted exhibits that appear to support his *768 allegation that the claims related back, we cannot say that those claims are barred by the expiration of the limitations period. See Charest v. State, 854 So.2d 1102 (Ala.Crim.App.2002). This issue is best left to a court when it has the entire record of the proceedings to evaluate.
Mack first argues that he has shown good cause for the disclosure of the grand and petit jury information. The Alabama Supreme Court in Ex parte Land, 775 So.2d 847 (Ala.2000), stated:
"We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997)]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.Ed.2d at 135....
"... By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief."
775 So.2d at 852.
Though the Courts in this State have had no opportunity to address what constitutes good cause, we quote from another jurisdiction that was cited with approval in the Land case. The Supreme Court of Illinois in People v. Johnson, 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002), stated:
"A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery.... Accordingly, the trial court should allow discovery only if the defendant has shown `good cause,' considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court's denial of a post-conviction discovery request only for an abuse of discretion. Fair, 193 Ill.2d at 265, 250 Ill.Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a *769 post-conviction proceeding and amounts to a `fishing expedition.'"
193 Ill.2d at 408, 250 Ill.Dec. at 836-37, 738 N.E.2d at 607-08 (emphasis added). See also People v. Lucas, 203 Ill.2d 410, 272 Ill.Dec. 298, 787 N.E.2d 113 (2002).
Mack alleged in his third amended petition that his trial counsel's performance was ineffective because he failed to effectively challenge the underrepresentation of African Americans on the grand and petit juries in Tuscaloosa County. Mack alleged that when Tuscaloosa County changed from driver's license lists to voter registration lists as its source for jury selection, the number of African-Americans selected for jury duty dramatically decreased. Mack also had witnesses at the status conference hearing that were prepared to testify concerning the jury selection process in Tuscaloosa County.
In order to prove that trial counsel was ineffective, Rule 32 counsel must show that the substantive claim. i.e., the claim counsel is said to have been ineffective for failing to raise, is meritorious. The United States Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), held that the systematic exclusion of certain groups from the jury selection process violates the Sixth and Fourteenth Amendments to the United States Constitution. In order to prove a violation of the fair-cross-section requirement, the challenging party must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. See Duren v. State, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). If the challenging party meets this test, then, pursuant to Taylor v. Louisiana, he is entitled to relief.[5]
To prevail on this claim the party must show the racial composition of prior grand and petit juries in a certain county over an extended period. Mack states that he has been given the names and addresses of the jurors that were called for service from 1975 to 1983, but, he says, that the information is useless without the demographic information. He contends that he cannot obtain the demographic information without a court order. Mack has shown good cause for obtaining this information. See Land, supra. Insofar as this information is concerned, the petition is granted.
Mack also challenges the trial court's ruling denying him discovery of law-enforcement records from 17 different agencies. Mack's alleges that he needs the records so that he can obtain the criminal histories of certain persons connected to the case.[6] He has requested the records of the following law enforcement agencies:
The Tuscaloosa City Police Department
The Birmingham Police Department
The Huntsville Police Department
The Moundville Police Department
The Northport Police Department
The Tuscaloosa Police Department
The Jefferson County Sheriff's Department (Bessemer Division)
The Jefferson County Sheriff's Department (Birmingham Division)

*770 The Madison County Sheriff's Department
The Alabama Bureau of Investigation
The Western Alabama Narcotics Squad
The West Alabama Narcotics Squad
The Madison County Drug Task Force
The Walker County Narcotic Enforcement Team
The Drug Task Force of the Sixth Judicial Circuit of Alabama
Investigators employed by the Tuscaloosa County District Attorney
Investigators employed by the Attorney General of Alabama[7]
Mack's only contention regarding the discovery of these records is that he needs this information to possibly attack the credibility of certain state witnesses. We have often stated that there is no absolute right to discovery of criminal records of state witnesses. As we stated in Hardy v. State, 804 So.2d 247, 286 (Ala.Crim.App.1999):
"We have held in Alabama in a number of cases that a defendant is not entitled to the general disclosure of the criminal records of the state's witnesses. See, e.g., Davis v. State, 554 So.2d 1094 (Ala.Crim.App.1984), aff'd, 554 So.2d 1111 (Ala.1989), cert. denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991); Wright v. State, 424 So.2d 684 (Ala.Crim.App.1982) (no absolute right of disclosure of criminal records of state's witnesses); Mardis v. State, 423 So.2d 331 (Ala.Crim.App.1982); Mack v. State, 375 So.2d 476 (Ala.Crim.App.1978), aff'd, 375 So.2d 504 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 [(1980)]. We have also held that the trial court's refusal to order the prosecution, pursuant to a defendant's discovery motion, to provide the criminal record of each expected witness for the state was not a violation of Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] and its progeny. Davis v. State, 554 So.2d at 1100."
"`[T]he trial court has discretion in determining whether to order discovery of the prior convictions of witnesses or other possible impeachment evidence, and such a decision will not be overturned absent an abuse of discretion.'" Minor v. State, 780 So.2d 707, 739 (Ala.Crim.App.1999) (quoting Davis v. State, 720 So.2d 1006, 1027 (Ala.Crim.App.1998)). See also Ross v. State, 555 So.2d 1179 (Ala.Crim.App.1989); Williams v. State, 451 So.2d 411 (Ala.Crim.App.1984); and Mardis v. State, 423 So.2d 331 (Ala.Crim.App.1982).
For a writ of mandamus to issue four prerequisites must be satisfied. There must be (1) a clear legal right in the petitioner to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. See State v. Williams, 679 So.2d 275 (Ala.Crim.App.1996).
Mack has failed to establish a clear legal right to the law-enforcement records of 17 different agencies. Because there is no absolute right to discover this information, Mack has failed to establish the requirements for mandamus relief.[8] For the foregoing *771 reasons this petition is granted in part and denied in part.
PETITION GRANTED IN PART AND DENIED IN PART.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur.
SHAW, J., concurs in part and dissents in part, with opinion, which COBB, J., joins.
SHAW, Judge, concurring in part and dissenting in part.
I agree that the petitioner has failed to establish a clear legal right to the discovery of law-enforcement records from 17 different law-enforcement agencies. However, I disagree with the majority's conclusion that the petitioner has established a clear legal right to the discovery of demographic information of grand and petit juries in Tuscaloosa County from 1978 through 1995 based on his claim of ineffective assistance of trial counsel.
It appears that the majority is granting the mandamus petition based on the petitioner's claim that his trial counsel was ineffective for allegedly not properly investigating and presenting evidence to the trial court of what the petitioner says was the systematic underrepresentation of African-Americans on grand and petit jury venires in Tuscaloosa County. The State argues that this claim is time-barred by Rule 32.2(c), Ala.R.Crim.P., because it was raised for the first time in the petitioner's untimely filed third amended petition. The petitioner argues that he raised this claim in his timely filed second amended petition. As the majority correctly recognizes, the second amended petition is not included as an exhibit before this Court; thus, we cannot determine what issues were raised in that petition. The majority nevertheless concludes that his ineffective-assistance-of-trial-counsel claim "relate[s] back" to one of the timely filed petitions (although the majority does not identify which one) because, it concludes, the petitioner "has submitted exhibits that appear to support his allegation that the claim[ ] related back." 894 So.2d at 767-68.
In his original petition, the petitioner alleged four claims relating to the alleged underrepresentation of African-Americans on venires in Tuscaloosa County: (1) that the trial court erred in denying his motion to quash the venire on the ground that there was significant underrepresentation of African-Americans on his venire; (2) that the trial court erred in denying his motion for funds to hire an expert to investigate the composition of grand and petit jury venires in Tuscaloosa County; (3) that his appellate counsel was ineffective for not raising on direct appeal the trial court's denial of his motion to quash the venire; and (4) that his appellate counsel was ineffective for not raising on direct appeal the trial court's denial of his motion for funds.
In Garrett v. State, 644 So.2d 977, 980 (Ala.Crim.App.1994), and again in Charest v. State, 854 So.2d 1102, 1104 (Ala.Crim.App.2002), this Court adopted the following rule from Rodopoulos v. Sam Piki Enters., Inc., 570 So.2d 661 (Ala.1990):
"`"Thus, where the plaintiff attempts through amendment to aver new facts or a new cause of action, beyond the statute of limitations period, which were not included in the original complaint, the amendment is barred. However, where the amendment is merely a more definite statement, or refinement, of a cause *772 of action set out in the original complaint, the amendment relates back to the original complaint in accordance with A.R.Civ.P. 15(c)."'"
570 So.2d at 664, quoting McCollough v. Warfield, 523 So.2d 374, 375 (Ala.1988), quoting in turn Cooper v. Thomas, 456 So.2d 280, 283 (Ala.1984). The petitioner's ineffective-assistance-of-trial-counsel claim is not just a "more definite statement, or refinement" of his substantive and ineffective-assistance-of-appellate-counsel claims raised in his original petition. Although based on the same underlying facts  i.e., the alleged underrepresentation of African-Americans on grand and petit venires in Tuscaloosa County  the ineffective-assistance-of-trial-counsel claim is an entirely new claim, in essence, a "new cause of action." Therefore, I do not believe it relates back to any of the claims the petitioner had timely raised in his original petition.
In my view, the petitioner has failed to establish a clear legal right to the discovery he requests based on his ineffective-assistance-of-trial-counsel claim. Because it appears that the majority is granting the mandamus petition based solely on this claim, I respectfully dissent from that portion of the opinion. I express no opinion as to whether the petitioner would be entitled to the discovery based on his claims of ineffective assistance of appellate counsel.

On Applications for Rehearing
PER CURIAM.
In Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003), this Court granted a petition for a writ of mandamus in part and denied the petition in part and directed Judge Charles R. Malone to allow discovery of demographic information regarding grand and petit jurors from 1978 through 1995 in Tuscaloosa County so that Albert Mack III could examine that information for support of his claims that his counsel's performance was deficient in failing to object to the composition of the grand jury that indicted Mack. The State argued that Mack's ineffective-assistance-of-counsel claims were procedurally barred because they were filed outside the limitations period and because the claim did not relate back to an earlier filed amended petition. In granting the petition in part we noted that neither the State nor Mack submitted a copy of the second amended petition; therefore, we could not say, based on the information before this Court at that time, whether Mack's claims were raised in an untimely amended petition.
On rehearing, the State has submitted a copy of the second amended petition and argues that the claims of ineffective assistance of counsel did not relate back to an earlier petition; therefore, the trial court correctly denied discovery of the demographic information regarding the grand and petit jurors. This information is new; it was not filed with the State's answer to the mandamus petition and this Court was not privy to it when it granted the petition in part. As the Alabama Supreme Court has stated:
"The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000), where this Court stated:
"`Vesta raises for the first time in its application for rehearing the argument that it is a third-party beneficiary of the retail installment contract between Lovejoy and Allen Motor Company. "We can not sanction the practice of bringing up new questions for the first time, in an ex parte application for rehearing." Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604 (1893) (on application for rehearing).

*773 "We cannot sanction the practice of bringing up new questions for the first time in application for rehearing." Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing." Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). "New supporting arguments presented for the first time on rehearing generally will not be considered." Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). "[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered." Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing).'
"We are constrained to deny the application."
Water Works & Sewer Bd. of the City of Selma v. Randolph, 833 So.2d 604, 608-09 (Ala.2002) (opinion on application for rehearing).
For the reasons stated above these applications for rehearing are due to be, and are hereby, overruled.
APPLICATIONS FOR REHEARING OVERRULED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur; COBB and SHAW, JJ., dissent.
NOTES
[1] It appears that another amended petition was filed after the actions that are the subject of this petition.
[2] Mack also requested information on the ages of the jurors; however, that aspect of the discovery motion is not raised in this mandamus petition.
[3] There is no dispute that the motion for clarification of the requested law-enforcement files was not denied until October 22, 2002, and that the petition was filed within the presumptively reasonable time from the denial of that motion.
[4] Effective August 1, 2002, the limitations period in Rule 32.2(c), Ala.R.Crim.P., is one year.
[5] The Duren test is an extremely difficult standard to satisfy. The majority of the challengers fail to meet the third prong-the most difficult one.
[6] We note that in some of these instances, Mack merely states the person's name and fails to identify how the individual is connected to the case.
[7] Mack has failed to connect the majority of the requested law-enforcement agency files with his case. Most appear to be outside of the area where the murder occurred and totally unconnected to the case. It appears that this motion is merely a "fishing expedition."
[8] We observe that adult convictions are matters of public record. Also, Mack was granted a great deal of discovery. He obtained information from social service agency records, medical records from several different institutions, correctional records, educational records, and the entire file of the Tuscaloosa County District Attorney's Office except for work product.