WOODALL, Justice.
The Court of Criminal Appeals issued a writ of mandamus in response to a petition filed by Albert Mack III, whose Rule 32, Ala. R.Crim. P., petition is pending in the Tuscaloosa Circuit Court, directing the trial court to ensure that Mack has access to certain demographic information he is seeking. The State of Alabama has sought review of the Court of Criminal Appeals’ decision in this Court by filing a petition for a writ of mandamus directed to the Court of Criminal Appeals. See Rule 21(e)(1), Ala. R.App. P. We deny the State’s petition.
Our consideration of this matter must begin with Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003) {“Mack I ”), in which the Court of Criminal Appeals granted, in relevant part, an earlier mandamus petition filed by Mack. Mack filed that petition after the trial court had denied his requests for “the demographic information on the race and gender of grand and petit jurors in Tuscaloosa County from 1978 through 1995.” 894 So.2d at 766. Mack had sought the demographic information in relation to his claim “that his trial counsel’s performance was ineffective because he failed to effectively challenge the under-representation of African-Americans on the grand and petit juries in Tuscaloosa County.” 894 So.2d at 769. The Court of Criminal Appeals held that Mack had shown good cause for obtaining the demographic information, and, insofar as the information was concerned, it granted Mack’s petition.
The judges of the Court of Criminal Appeals have responded to the State’s petition for a writ of mandamus directed to that court. See Rule 21(b), Ala. R.App. P. *899 In their response, the judges assert that “[t]he instructions in [Mack I ] were clear,” but they admit that the opinion “did not identify what agency could or would furnish [the demographic] information to Mack.” Judges’ response, at 7-8.
Until 2010, Mack took no further action to obtain any of the demographic information to which he had sought access, despite the favorable holding in Mack I. Then, on March 4, 2010, the trial court, on Mack’s motion, ordered the circuit clerk to produce the grand and petit jury venire lists from 1978 through 1995. The clerk promptly produced the lists, but only two lists from 1995 contained information regarding the race and gender of the members of the venire.
On April 1, 2010, Mack filed a motion seeking the trial court’s “compliance” with the decision in Mack I. More specifically, the motion requested that the court order “the Alabama Department of Motor Vehicles, the Administrative Office of Courts, the Tuscaloosa District Attorney’s Office, and the Tuscaloosa County Department of Voter Registration ... to produce any records in their custody or control that reflect the race and gender of jury venires between 1978 and 1995 in Tuscaloosa County.” On April 5, the trial court denied that motion on the bases that the circuit clerk had provided Mack everything within her possession and that the additional requests amounted to “nothing more than a fishing expedition.”
On April 6, 2010, Mack’s counsel sent a letter to the trial court explaining why she had reason to believe that the Tuscaloosa County Board of Registrars had demographic information responsive to the earlier request and stating that, with a court order, counsel would be given access to the available records. On April 9, the trial court entered another order denying any further discovery, and Mack filed a second petition for a writ of mandamus in the Court of Criminal Appeals.
On June 9, 2010, the Court of Criminal Appeals granted Mack’s petition. In a brief unpublished order, the court, relying upon the holding in Mack I, directed the trial court “to comply with [the Court of Criminal Appeals’] instructions in Mack [I ] and to ensure that Mack has access to the demographic information concerning the grand and petit jurors in Tuscaloosa County from 1978 through 1995.” Ex parte Mack (No. CR-09-0973, June 9, 2010), — So.3d-(Ala.Crim.App.2010) (table) (“Mack II ”). However, as in Mack I, the Court of Criminal Appeals did not identify which agency could or would furnish the demographic information to Mack. Thus, as the State correctly argues, Mack II “fails to provide any guidance to the circuit court [as to] what specific discovery Mack is entitled.” Petition, at 12. Thus, in deciding whether to issue a writ of mandamus to the Court of Criminal Appeals, we must look to the response to the State’s petition by the judges of that court to determine the breadth of the Court of Criminal Appeals’ order in Mack I.
In their response, the judges mention only that Mack “informed the circuit court that the information he sought was maintained by the Tuscaloosa Voter Registration Office and ... that he could have access to the information if the [trial court] would sign an order to that effect.”[1] Judges’ response, at 5. Then, according to the respondent judges, when the trial court “refused to sign [such an] order for discovery,” Mack filed his petition for a writ of mandamus in the Court of Criminal Appeals. Id. Therefore, we construe the *900 order in Mack II to order discovery only with regard to demographic information available from the Tuscaloosa County Board of Registrars. Our review of the order is de novo. Rule 21(e), Ala. R.App. P. However, “[t]he materials reviewed by this Court in considering a petition for writ of mandamus consist [only] of exhibits provided by the parties....” Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 232 n. 2 (Ala.2004).
In Mack I, the Court of Criminal Appeals clearly held that Mack was entitled to the demographic information about the jury venires in question. However, although the circuit clerk has been able to produce the jury lists Mack requested, only two of the lists reveal information about race or gender. On the other hand, it is undisputed that the board of registrars has in its records voter-registration applications that request, and generally contain, information about the applicant’s gender and race. We see no reason why the trial court should not be required to order that the voter-registration applications in the possession of the board of registrars be made available to Mack for his review. Hopefully, Mack will be able to gather from this review the demographic information he needs without again requesting further discovery from other sources, allowing his long pending Rule 32 petition to move toward a conclusion.
The State’s arguments in support of its petition are not persuasive. First, the State argues that Mack is entitled to no further discovery, “because the circuit court has already attempted to provide ‘demographic information’ by ordering discovery of the jury venire lists of Tuscaloosa County from 1978-1995.” Petition, at 14. Although it is true that the trial court ordered the production of the venire lists, it is equally true that “Mack still needs the demographic information.” Mack’s response, at 15.
Next, the State argues that Mack’s request for further discovery is a “textbook example of a fishing expedition.” Petition, at 20. This is so, according to the State, because there is no evidence indicating that the board of registrars possesses any jury list or other information concerning the identity of veniremembers for the period in question. This argument completely misses the mark. Mack already has the jury lists. He needs the voter-registration applications available from the board of registrars because those applications are likely to reveal the type of demographic information that is missing from all but two of the jury lists. More specifically, if Mack is able to identify the venire-members’ voter-registration applications, he is likely to have available to him information concerning the race and gender of those veniremembers.
Third, the State argues that requiring the board of registrars to produce the available voter-registration applications “would create an overwhelming strain and burden on that agency’s resources.” Petition, at 29. This argument is based on the State’s assumption that “an employee [of the board] would have to manually search each box of paper voter registration applications by hand and compare each application to a list of people who served on juries in Tuscaloosa County from 1978-1995.” Id. However, as previously stated in this opinion, the trial court is required to order only that the voter-registration applications be made available to Mack for his review.[2] The exhibits before this Court in this petition for the writ of mandamus indicate that the board of registrars has *901 already located the boxes containing the voter-registration applications and identified those applications within the scope of Mack’s request.
Finally, we note that the State does not argue that the Court of Criminal Appeals has ordered the production of any confidential information. Indeed, the materials before this Court belie any concern that the voter-registration applications contain confidential information. “Even if Mack [is] able to gain access to voter registration records, such records do not request an applicant’s full Social Security number. (Ex. D., App. 8 at p. 2).” Petition, at 25. The exhibit referenced by the State states, based on information provided by an employee of the board of registrars, that the “applications request [only] the last four digits of the applicant’s Social Security number.”
For these reasons, the State’s petition for a writ of mandamus directed to the Court of Criminal Appeals is denied.
PETITION DENIED.
COBB, C.J., and LYONS, STUART, and PARKER, JJ., concur.
BOLIN, J., concurs specially.
SMITH and MURDOCK, JJ., dissent.
SHAW, J., recuses himself.*

. The judges never mention in their response the Tuscaloosa District Attorney's Office, the Administrative Office of Courts, or the Department of Public Safety.

. "Mr. Mack only requests that the information be made available to him. He will make arrangements to gather, review, copy or scan the necessary information.” Mack's response, at 25.