On Application for Rehearing'

BURKE, Judge.
This Court’s opinion of August 30, 2013, is withdrawn, and the following is substituted therefor.
David Eugene Davis pleaded guilty to capital murder wherein -two or more people were murdered by one act or pursuant to one scheme or course of conduct, in violation of § 13A-5-40(a)(10), Ala,Code 1975. As required by § 13A-5-42, Ala. Code 1975, the State presented evidence to a jury in order to prove Davis’s guilt beyond a reasonable doubt.[1] The jury re *419 turned a guilty verdict and, after the penalty phase of the trial, recommended by a vote of 11 to 1 that Davis be sentenced to death. The trial court accepted the jury’s recommendation and sentenced Davis to death. This Court affirmed the judgment of the trial court in Davis v. State, 740 So.2d 1115 (Ala.Crim.App.1998). The Alabama Supreme Court affirmed this Court’s decision in Ex parte Davis, 740 So.2d 1135 (Ala.1999), and the United States Supreme Court denied certiorari review. Davis v. Alabama, 529 U.S. 1039, 120 S.Ct. 1535, 146 L.Ed.2d 349 (2000).
On March 16, 2001, Davis filed a timely petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. Davis amended his petition three times, and, for various reasons, Davis’s Rule 32 proceedings were assigned to different judges over an 11-year period.[2] Ultimately, the case was assigned to Judge William Cardwell, who summarily dismissed Davis’s third amended petition on November 4, 2010. This appeal follows.
We first note that § 13A-5-42, Ala.Code 1975, provides, in part, that a “guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence.” In Hutcherson v. State, 727 So.2d 846, 851 (Ala.Crim.App.1997), this Court interpreted the phrase “the proceeding resulting in the conviction” to mean the guilt phase of a capital trial. Accordingly, on direct appeal, this Court reviewed the proceedings before and during the guilt phase of Davis’s trial' for jurisdictional errors. Davis v. State, 740 So.2d at 1117. Additionally, we reviewed the penalty phase of the proceedings for any error, whether preserved or plain, as required by Rule 45A, Ala. R.App. P., which provides:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected, the substantial right of the appellant.”
As noted, this Court found no such error and affirmed Davis’s conviction and sentence.
We also note that, “‘even though this petition challenges a capital conviction and a death sentence, there is no plain-error review on an appeal from the denial of a Rule 32 petition.’ ” Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003), quoting Dobyne v. State, 805 So.2d 733, 740 (Ala.Crim.App.2000). ‘“In addition, “[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.”’” Burgess v. State, 962 So.2d 272, 277 (Ala.Crim.App.2005), quoting Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995), quoting in turn. State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993).
The facts from Davis’s case were set forth in this Court’s opinion on direct appeal as follows:
*420 “At around 9 p.m. on June 23, 1996, [Davis] was drinking alcohol with his ex-brother-in-law, Tommy Reed. He told Reed he wanted to kill his ex-wife, from whom he had recently been divorced, and he said he knew where he could get a firearm. He left Reed, and around 10 p.m., he asked two people at a service station for directions to the victims’ home. At the time, he was aggressive and seemed to be in a hurry. According to his statements to police, he went to the victims’ home and spoke to Kenneth Douglas. At some point, he got into a confrontation with Douglas during which he took a firearm from Douglas and shot him. When he heard another person moving in the bedroom, he shot into that room, killing John Fikes. He then started collecting various items belonging to the victims, including several firearms, which he said he intended to sell to obtain crack cocaine. As he was doing so, he noticed a kerosene lantern and decided to set the house on fire.
“Around 1:30 a.m. the following morning, a relative of one of the victims noticed that the victims’ house was on fire and telephoned 911. Also around 1:30 a.m., [Davis] went to Louis Dodd’s home and attempted to sell Dodd some of the firearms he took from the victims’ home. Dodd described [Davis] as being ‘scared to death’ and said he appeared to be ‘drunk and on drugs.’ When Dodd told him not to come to his house at that time of the morning asking to sell stolen property, he told Dodd, ‘They come from far away.’ Shortly thereafter, the Trussville Police Department received a complaint about a man walking door-to-door, holding a sawed-off shotgun in one hand and a jug in the other, and asking for gasoline for his vehicle. When they arrived at the scene, the officers recognized [Davis’s] vehicle and located [Davis]. As the officers were trying to arrest [Davis], he dropped the shotgun behind some bushes. The officers testified that [Davis] was aware of what was happening as they arrested him and that he probably was not intoxicated to such a degree that he could be arrested for driving under the influence. They also testified that the area where they arrested [Davis] was known for drug activity. The officers found numerous items in his vehicle that belonged to the victims.
“Tommy Reed, [Davis’s] ex-brother-in-law, testified that, on June 24, 1996, he talked to [Davis] while [Davis] was in the Trussville jail. When Reed asked him how bad it was, [Davis] responded that it was ‘real bad’ and ‘more than life.’ He then said, ‘I’ll see you in heaven.’
“At trial, some of the witnesses speculated that [Davis] was under the influence of drugs and alcohol when he committed the murders.
“The medical examiner testified that the victims died from the gunshot wounds.”
Davis v. State, 740 So.2d at 1118-19. The record also reveals that Davis gave two written statements to the police in which he admitted to shooting Kenneth Douglas and John Fikes, the victims, gathering their belongings, and setting fire to their house. (R1. 260.)[3]

Standard of Review

Generally, “[t]he standard of review on appeal in a post conviction proceeding is whether the trial judge abused *421 his discretion when he denied the petition.” Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). “ ‘A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.’” Hodges v. State, 926 So.2d 1060, 1072 (Ala.Crim.App.2005), quoting State v. Jude, 686 So.2d 528, 530 (Ala.Crim.App.1996)(internal citations omitted). However, “when- the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). Additionally, in Ex parte Hinton, 172 So.3d 348, 352 (Ala.2012), the Alabama Supreme Court held that when a circuit court’s decision in a Rule 32 petition is based solely on the “ ‘cold trial record,’ ” it is “in no better position than .... an appellate court to make the determination it made.” Therefore, in that situation, the reviewing court should apply a de novo standard of review. Id. The judge who presided over Davis’s Rule 32 proceedings was not the judge who had presided over Davis’s trial and, because the petition was summarily dismissed, no evidentiary hearing was held. Accordingly, we will review the issues raised by Davis de novo.
In his third amended petition, Davis raised multiple, issues and subissues. However, we will address only those issues Davis has argued in his brief on appeal. Allegations that are not expressly argued on appeal are deemed to be abandoned and will not be reviewed by this Court. Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).
I.
First, Davis asserted that he was denied the right to be present when the trial court gave supplemental instructions to the jury during the guilt phase of his trial. Specifically, Davis claimed in his third amended Rule 32 petition:
“Outside the presence of Mr. Davis, his counsel, and the prosecution, the trial court stated the following to the jury:
“‘Ladies and Gentlemen, you began deliberation yesterday afternoon, and you have been back this morning and you have further deliberated for two hours. The allegations in this case are very sérious, and don’t get the idea I’m telling you not to deliberate. What I want to make sure is that you stay focused on the issues in this ease. Your determination at this point is whether there is proof beyond a reasonable doubt that the defendant committed the offense of capital murder. If you do not find such proof beyond a reasonable doubt of the elements of capital murder as I have explained them to you, then you would also consider if the defendant was guilty of any lesser included offenses or whether the defendant, was not guilty. What you are to consider — and the only things you are to consider .in this case is the evidence that has been brought to you from the witness stand, the exhibits that have been introduced. You may consider the defendant’s plea of guilt in this case. You may consider any inference arising from the evidence or lack of evidence in this case in your deliberations. The burden is on the State in ■this case as I previously told you. The first thing I told you at the beginning of my charge yesterday, however, -is there are several things you are not to consider. .It'would be highly improper for you to consider any issues in this case regarding punishment at this point. That is not your job. You are only to consider the facts of this case and consider render *422 ing one of the verdict forms or a combination of verdict forms I have given you in this ease, and the matter of any punishment to be rendered based on any verdict that you might -render in this case is a matter for separate consideration at a different time. Confine your- discussions and deliberation to the evidence you have heard in this case, the inferences you can draw from that, evidence, and the other instructions I have given you. With that in mind, -you -are to return to the jury room and begin deliberations.’ ”
(C. 1577-78.) Davis argued that, “[u]nder the Sixth and Fourteenth Amendments to the United States Constitution, ‘the presence of a- defendant is a condition of due process to the extent -that a fair and just hearing would be thwarted by,,his absence.’ ” (C. 1578, citing Snyder v. Massachusetts, 291 U.S. 97, 107, 54 S.Ct. 330, 78 L.Ed. 674 (1934).)
In its answer and motion to dismiss Davis’s third amended Rule 32 petition, the State argued that this claim was procedurally barred by Rule 32.2(a)(5), Ala. R.Crim. P., because it could have been, but was not, raised on direct appeal. The circuit court agreed with the State and summarily dismissed this claim pursuant to Rule 32.2(a)(5), Ala. R.Crim. P.
Rule 32.2(a)(5) provides that “[a] petitioner will not be given relief under this rule based upon any ground ... [wjhich could have been but was not raised on appeal, unless the ground for relief arises under' Rule 32.1(b).” Rule 32.1(b), Ala. R.Crim. P., provides that a petitioner is entitled to relief if “[t]he court was without jurisdiction.to render judgment or to impose sentence.” In Ex parte Seymour, 946 So.2d 536, 537 n. 3 (Ala.2006), the Alabama Supreme Court explained:
“The language ‘jurisdiction to render judgment or impose sentence’ [in Rule 32.1(b), Ala. R.Crim. P.,] refers to the court’s jurisdiction over the subject matter, as opposed to the person. Although a court must have both personal jurisdiction and subject-matter jurisdiction in an action, Woolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911), defects in personal jurisdiction are waived if they are not raised before trial. City of Dothan v. Holloway, 501 So.2d 1136, 1139 (Ala.1986). The Rule 32.1(b) exception applies only to claims alleging that- the- trial court lacked subject-matter jurisdiction.”
This Court has held that “[a] constitutional challenge is nonjurisdictional and therefore subject to the procedural bars set forth in Rule 32, Ala. R.Crim. P.” Abrams v. State, 978 So.2d 794, 795 (Ala.Crim.App.2006), citing Ex parte Sanders, 792 So.2d 1087 (Ala.2001), See also Jackson v. State, 12 So.3d 720, 721-22 (Ala.Crim.App.2007) (holding that a defendant’s claim that he was not present during initial jury selection did not impinge upon the subject-matter jurisdiction of the trial court). Accordingly, Davis’s claim is nonjurisdictional and, therefore, subject to the procedural bars of Rule 32.2, Ala. R.Crim. P.
On appeal, Davis argues that he could not have raised this claim on direct appeal because, he says, “the appellate record alone was not sufficient to establish that Mr. Davis was denied the right to be present.” (Davis’s brief, at 23.) However, on direct appeal, Davis argued that the above-quoted supplemental instruction was improper. Davis v. State, 740 So.2d at 1126—27. Thus, Davis would have been aware, at the time he filed his direct appeal, that he was not present when that supplemental instruction was given. Accordingly, Davis could have raised this argument on direct appeal, and the circuit court was *423 correct in finding that this issue was precluded by Rule 32.2(a)(5), Ala. R,Crim. P.
Rule 32.7(d), Ala. R.Crim. P., provides that a circuit court may summarily dismiss a petition if “the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings.... ” Because Davis’s claim regarding his alleged absence when the supplemental jury instruction was given was properly precluded, the circuit court did not err by summarily dismissing that claim.
II.
Next, Davis asserted that the trial judge engaged in improper ex parte communications with the jury. According to Davis, the judge, without prompting from the jury, entered the jury room during both its guilt-phase and its penalty-phase deliberations and discussed Davis’s ease. Davis claimed that Judge Austin, the judge who presided over his trial, “told the jury that it was taking too long to reach a decision; that the reason he reinstructed the jury at the guilt phase was that the jury was taking too long to reach a decision; that the victims’ family members had asked [him] why the jury was taking so long to reach a decision; and that the jury’s decision at the penalty phase was only a recommendation.” (C. 1580.) Davis also claimed that the judge commented on Davis’s guilty plea “and provided the jurors with additional supplemental instructions about the applicable law.” (C. 1580.) Davis asserted that neither he, nor defense counsel nor appellate counsel nor the prosecution nor the court reporter was made aware of these alleged communications.
In its answer and motion to dismiss, the State submitted a sworn affidavit from Judge Austin in which he expressly denied having had any ex parte contact with the jury. (C. 1760-62.) In its order dismissing Davis’s petition, the circuit court stated:
“This Court has considered the sworn affidavit executed by Judge Austin and filed by the State pursuant to Rule 32.7(a), Ala. R.Criríl. P. In his affidavit, Judge Austin specifically denies having any ex parte contact with the jurors during their deliberations. Based on Judge Austin’s affidavit, and the fact that Davis did not proffer a single specific fact in his petition that would refute it, this Court finds that the allegation in part II of his petition is without merit.”
(C. 1985.)
.On appeal, Davis argues that the circuit court’s summary dismissal of this claim was improper because, he says, he was required only to.plead, not to prove, his allegations in order to avoid summary dismissal. Further, Davis argues that it was improper for the circuit court to consider the affidavit submitted by the State without affording him an opportunity either to cross-examine Judge Austin or to submit affidavits of his own. We agree that Davis was not required to, submit his.own affidavits at the pleading stage of the Rule 32 proceedings. The record does not indicate that the circuit court instructed either party to submit, affidavits in lieu of an eviden-tiary hearing pursuant to Rule 32.9(a), Ala. R.Crim. P.
However, Rule 32.3, Ala. R.Crim. P., provides, in pertinent part, that “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Further, Rule 32.6(b), Ala. R.Crim. P., provides:
*424 “The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
We find that Part II of Davis’s petition does not meet the pleading and specificity requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P.
This Court has held:
“ ‘An evidentiary hearing on a [Rule 32] petition is required only if the petition is “meritorious on its face.” Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is “meritorious on its face” only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).’ ”
Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App.2003), quoting Moore v. State, 502 So.2d 819, 820 (Ala.1986). Additionally, “where the judgment of the circuit court denying a petition for post-conviction relief is correct for any reason, it will' be affirmed by this Court, even if the circuit court stated an incorrect reason for its denial?” Swicegood v. State, 646 So.2d 159, 160 (Ala.Crim.App.1994).
As noted, Davis alleged that Judge Austin entered the jury room during both the guilt-phase and the penalty-phase deliberations and gave the jury supplemental instructions outside the presence of counsel. However, it is unclear from the petition whether Davis is claiming that the judge ■ made the same ex parte comments during both phases or whether' some of the comments were made during the guilt-phase deliberations while others were made during the penalty-phase deliberations. We also note that, although Davis identified the general substance of the alleged communications, he failed to identify the source of the information. Finally, Davis’s petition' does not’ indicate when he became aware of this information.
In his reply brief, Davis argues that “[t]here is no mystery as to whom [he] could call at a hearing — or who could have provided counsel’s good-faith basis for raising the claim. Judge Austin’s audience is well circumscribed. The only persons who should have been anywhere near the jury room were the jurors and the bailiffs — fourteen people in total.” . (Davis’s reply brief, at 12 (emphasis added)). Although Davis is correct in asserting that those were the only people who should have been anywhere near the jury room, his petition alleged that there was at least one additional person near the jury room: Judge Austin. Thus, Davis could have been relying on Judge Austin to admit, at an evidentiary hearing, that he made the alleged statements to the jury. In fact, Davis filed a motion to disqualify Judge Austin from presiding over the Rule 32 proceedings because, he said, “Judge Austin will be a witness to facts critical to the resolution of claims pled in Mr. Davis’s amended petition for relief under Rule 32_” (C. 236.) Additionally, there could have been any number of witnesses who were impermissibly near the jury room and who overheard the alleged comments, or Davis’s information, could be based on hearsay statements from jurors to other witnesses,
In Daniel v. State, 86 So.3d 405, 422 (Ala.Crim.App.2011), a Rule-32 petitioner claimed that his trial counsel was ineffec *425 tive for failing to interview his eoworkers regarding certain evidence they might have been able to provide at his trial. This Court held that the claim was not sufficiently specific because the petitioner “failed to identify, by name, any coworker whom counsel should have consulted. Specificity in pleading requires that the petitioner state both the name and the evidence that was in the witness’s possession that counsel should have discovered.... ” Id.; see also Beckworth v. State, [Ms. CR-07-0051, May 1, 2009] — So.3d —, — (Ala.Crim.App.2009)(holding that a petition lacked specificity because petitioner “failed to include in his petition any facts indicating when he learned of [the codefendant’s statement] or indicating that he did not learn about the statement in time to raise the issue in - a posttrial motion or on appeal”). - Davis’s petition is similarly deficient.
Although the circuit court’s summary dismissal was not:based on a lack of specificity, an appellate court may, in general, affirm the circuit court’s dismissal if it is correct for any reason. This Court has held:
“Because due process is not implicated and Ex parte Clemons [, 55 So.3d 348 (Ala.2007),] is not applicable in this case, this Court may apply the well-settled rule that an appellate court may affirm a circuit court’s judgment if that judgment is correct for any reason. As the Alabama Supreme Court explained in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So.2d 1013 (Ala.2003):
“‘Nonetheless, this Court will affirm the trial court on any Valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). This rule fails in .application only where due-process constraints require some notice at -the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to- affirm a judgment, Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant’s evidence on an element of a claim or defense and therefore has not. shifted the burden of producing substantial evidence in support of that element, Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Kennedy v. Western Sizzlin Corp., 857 So.2d 71 (Ala.2003)).’
“881 So.2d at 1020.”
A.G. v. State, 989 So.2d 1167, 1180-81 (Ala.Crim.App.2007). See also McNabb v. State, 991 So.2d 313, 335 (Ala.Crim.App.2007)(This court may sua sponte apply the specificity requirement contained in Rule 32.6(b), Ala. R.Crim. P.). Similarly, Ex parte Clemons, 55 So.3d 348 (Ala.2007), is not applicable to this issue and Davis’s due-process rights are not implicated by the sua sponte application of Rule 32.6(b).
We also note that in Ex parte McCall, 30 So.3d 400 (Ala.2008), the Alabama Supreme Court further limited an appellate court’s ability to affirm a circuit court’s dismissal on any valid legal ground. In McCall, the circuit court held an evidentia-ry hearing but ultimately dismissed the petition. However, the circuit court failed *426 to include -written findings of fact in its order dismissing the petition. This Court nevertheless affirmed the dismissal by an unpublished memorandum, because “[t]he circuit court’s order correctly found that McCall did ‘fail to - state a claim.’ Rule 32.7(d) [, Ala. R.Crim. P.]” McCall v. State, (No. CR-06-0021, Dec. 14, 2007), 19 So.3d 259 (Ala.Crim.App.2007) (table). The Alabama Supreme Court reversed this Court’s decision and held that, by holding an evidentiary hearing, “the [circuit] court implicitly found that the issues presented were ‘material’issue[s] of law or fact which would entitle [McCall] to1 relief,’ Rule 32.7(d), and, under Rule 32.9(d), the trial court therefore had a responsibility to make findings of fact as to each of those issues.” Ex parte McCall, 30 So.3d at 404. Accordingly, the circuit court’s judgment was reversed and the case was remanded with instructions that the circuit court enter written findings of fact. McCall v. State, 30 So.3d 404, 405 (Ala.Crim.App.2009).
Thus, the affirm-on-any-valid-legal-ground rule does not allow this Court to absolve a circuit court of its duty to enter written findings of fact under Rule 32.9(d), Ala. R.Crim. P.[4] See also Andrews v. State, 38 So.3d 99, 104 (Ala.Crim.App.2009) (“Although it seems a waste of scarce judicial resources to remand this case for the trial court to enter a new order setting forth its specific findings of fact, we are nevertheless bound by the [Alabama Supreme] Court’s holding in Ex parte McCall.”). Once a circuit court holds an evidentiary hearing or takes evidence by affidavits in lieu of a hearing, see Rule 32.9(a), Ala. R.Crim. P., it is required to enter written findings of fact related to each material issue of law or fact- that could entitle the petitioner to relief. ■:.
Had the circuit court in this ease held a hearing or directéd the parties to submit affidavits in lieu of a hearing, then McCall would have 'compelled this Court to remand the case for the entry of factual findings despite the fáct that the'petition Was deficiently pleaded. However, the proceedings in the present case did not include, or require, an evidentiary hearing. Although the circuit court considered an affidavit submitted by the State, it did not hold a hearing or direct either party to submit affidavits pursuant to Rule 32.9(a). Thus, McCall is inapposite. Accordingly, because Davis failed to- fully plead the facts that would have entitled him to relief, the circuit court did not err by summarily dismissing his claim asserting improper ex parte communications. • .
We also note that Judge Austin’s affidavit was executed on July 13, 2005, and was first filed on July 19, 2005, as an exhibit attached to the State’s response to Davis’s first amended petition. (C. 621.) Because Davis’s. petition was not ruled -on until October 31, 2010, Davis had notice of the existence of the affidavit for more than five years. Although. Davis was not required to submit his own affidavits in response to the affidavit submitted by the State, nothing precluded him from doing so in the intervening five-year period.- •
III.
Next, Davis contended that his trial counsel were ineffective for several reasons both before and, during his trial. With regard to ineffective-assistance-of-counsel claims, this Court has held:
“When reviewing claims of ineffective assistance of counsel, we apply the stan *427 dard adopted by the United States Supreme Court in Strickland Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on, a claim of ineffective assistance of counsel a petitioner must show: (1) that counsel’s performance was deficient; and’ (2) that the petitioner was prejudiced by the deficient performance.
“ ‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that, a particular act or, .omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the .distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, .the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, [350 U.S. 91] at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.’
“Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. 2052.
‘.‘ ““This court must avoid using “hindsight” to evaluate the. performance of counsel. We must evaluate all the circumstances surrounding the case at.the time of counsel’s actions before determining whether counsel rendered ineffective assistance.’ ” Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.1999), quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992). “[A] court must; indulge a '.strong presumption that counsel’s conduct falls within the wide .range of reasonable professional • assistance.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
“A.G. v. State, 989 So.2d 1167, 1171 (Ala.Crim.App.2007).”
Lee v. State, 44 So.3d 1145, 1154-55 (Ala.Crim.App.2009). Additionally,
“[w]hen an appellant’s claim of ineffective assistance of counsel arises from' alleged, errors committed by counsel in, the guilty plea process, the prejudice prong of the Strickland analysis is satisfied by the appellant’s establishing ‘that there is a reasonable probability that,, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ ”
Culver v. State, 549 So.2d 568, 572 (Ala.Crim.App.1989), quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). With these principles in mind, we will now address each of Davis’s ineffective-assistance-of-counsel claims.
A.
First, Davis contended that his trial counsel were ineffective for failing to adequately investigate and advise him regarding the defenses of -provocation, self-defense, and intoxication. Davis asserted that “[i]f trial counsel had not failed to investigate fully and independently the *428 prosecution’s case as well as all avenues of defense and mitigation available to [Mm], there is a reasonable probability that [he] would have maintained his not guilty plea and his defenses would have had sufficient evidentiary support to succeed at trial.” (C. 1588.) Additionally, Davis argued that, but for counsel’s alleged deficiencies, they would have discovered mitigating evidence that could have been presented to the jury during the penalty phase of his trial. According to Davis, the jury would have likely returned a different advisory verdict had it been able to consider such evidence.
Davis asserted that a reasonable investigation into his state of intoxication on the night of the offense would have revealed that he ingested substantial amounts of alcohol and cocaine in the hours leading up to the murders. Davis also claimed that his counsel failed to uncover evidence regarding Davis’s long history of substance abuse. Additionally, Davis contended that his counsel should have retained a toxicology expert to present this evidence to the jury. According to Davis, such evidence could have been used in his defense in order to show that he was too intoxicated at the time of the offense to form the specific intent to kill the victims.
Davis also claimed that his counsel failed to adequately investigate the character and background of Kenneth Douglas, one of his victims. Accoi’ding to Davis, a reasonable investigation would have revealed that Douglas had a violent temper; that Douglas had assaulted a police officer in 1994; and that Douglas’s wife had accused Douglas of being violent and had sought a temporary restraining order against him. Davis argued that evidence regarding Douglas’s violent character would have supported theories of self-defense and heat-of-passion manslaughter. Additionally, Davis claimed that this evidence, as well as testimony from ballistics experts and crime-scene-reconstruction experts would have served to dispute the State’s theory of the circumstances leading up to Kenneth Douglas’s death. The circuit court found that these claims were either meritless or lacked the specificity required by Rule 32.6(b), Ala. R.Crim. P.
In Jones v. State, 753 So.2d 1174, 1191 (Ala.Crim.App.1999), this Court discussed counsel’s duty to investigate:
“While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, ‘this duty only requires a reasonable investigation.’ Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel’s obligation is to conduct a ‘substantial investigation into each of the plausible lines of defense.’ Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). ‘A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.’ Id., 466 U.S. at 686, 104 S.Ct. at 2063.
“ ‘The reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions. Counsel’s actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.’
“Id., 466 U.S. at 691, 104 S.Ct. at 2066.”
*429 Additionally, in Smith v. State, 112 So.3d 1108 (Ala.Crim.App.2012), quoting Brooks v. State, 929 So.2d 491, 508-04 (Ala.Crim.App.2005), this Court, in discussing an appellant’s claim that his counsel performed a deficient investigation, noted:
“ i «'pkej.g js no doubt that counsel did not exhaustively investigate every single detail and aspect of this' case. The law, however, does not require such and, in fact does not even require an investigation into every possible theory of defense. Moreover, because the chosen theory of defense was reasonable, ‘it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer’s pursuit of [a reasonable-doubt defense] was not a deliberate choice between [it and some other course].’ Chandler v. United States, 218 F.3d 1305, 1316, n. 16 (11th Cir.2000) (en banc). The ‘inquiry is limited to whether [the chosen defense] might have been a reasonable one.’ Id., citing Harich v. Dugger, 844 F.2d 1464, 1470-71 (11th Cir.1988)(en banc); Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir.1995).” ’ ”
112 So.3d at 1140-41.
The record reveals that Davis gave two written statements to police in which he admitted to killing Kenneth Douglas and John Fikes. Davis also admitted to the police that, after shooting them, he “started gathering up all [the] firearms, rod and reels, and then poured Coleman lantern fuel in the living room and lit it and left.” (Rl. 260.) When Davis was arrested later that same day, the victims’ belongings were discovered in Davis’s vehicle.
Davis’s counsel would have known about this evidence before trial. In his petition, Davis noted the following regarding the advice he received from counsel:
“On June 2, 1997, one week before trial was scheduled to commence, trial counsel met with Mr. Davis at the St. Clair County jail. Trial counsel’s notes reflect that counsel discussed ‘[three] options’ with Mr. Davis during the June 2 meeting: (1) proceeding to trial on the plea of not guilty; (2) proceeding to trial on a not guilty by reason of insanity plea; and (3) changing his plea from not guilty to guilty. : Trial counsel’s notes from the June 2 meeting indicate that counsel advised Mr. Davis that the first option would result íñ a ‘for sure death’ sentence. With respect to the second option, trial counsel’s notes indicate that counsel advised Mr. Davis that there was ‘no med[ical] evid[enee].to supp[ort]’ proceeding on an ‘insanity plea.’ However, with respect to the third option, trial counsel’s notes indicate that counsel advised Mr. Davis that by entering a guilty plea to capital murder he would ‘keep out horrible pictures’ and enable the defense to make an ‘att[empt] at mercy for life w[ith]out the [possibility of parole].’ At the bottom of counsel’s notes about the three options discussed with Mr. Davis, trial counsel wrote: ‘We recommend # 3.’ ”
(C. 1609-10.) Thus, it appears that counsel’s strategy was to have Davis plead guilty and accept responsibility for his actions in hopes that the jury would recommend life without the possibility of parole as opposed to the death ^penalty. Aggressively pursuing and presenting theories of self-defense, intoxication, and provocation would have likely undermined that strategy-
Although counsel’s strategy proved to be unsuccessful, this Court must “avoid using ‘hindsight’ to evaluate the performance of counsel” and “evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.” Lee v. State, 44 So.3d at 1155. *430 Based on the overwhelming evidence the State had, including two written statements, in which Davis admitted to shooting the victims, taking their property, and setting their house on fire, we cannot say that counsel’s- strategy constituted deficient performance.
Accordingly, even if we assume that the allegations in Davis’s - petition regarding counsel’s • investigation are true, Davis’s claim was not meritorious on its face because it did not meet the first prong of the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., that counsel’s performance was deficient. In order to succeed on a claim of ineffective assistance of counsel, a petitioner must meet both prongs of the standard set out in Strickland. Lee v. State, 44 So.3d at 1154.
We also note that, during the guilty-plea colloquy, the following exchange took place:
“THE COURT: ... If you went to trial on these offenses in front of a jury, a jury would have the opportunity to consider whether you;,were guilty,'instead of a capital offense, of any le'sser included offenses. I would anticipate in this ease that the issue to be submitted to the jury — lesser included offenses of murder and possibly manslaughter. It would be any other lesser included offenses supported by the evidence in this case. Do you understand a jury, would have the option of determining whether or not you were guilty instead of a capital offense, of a lesser included offense. Have your lawyers talked to you about that?
“[Davis]: Yes, sir.”
(C. 592-93.) Thus, it appears from the record that Davis’s counsel did discuss the possibility of lesser-included offenses with him. This would refute Davis’s claim that he was not advised of other options that were available to him. Nevertheless, Rule 32.7(d), Ala..R.Crim. P., states that a circuit court may summarily dismiss a petition if “the court determines that the petition is not sufficiently specific, or is. precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings....” Because Davis failed to plead a facially meritorious claim of ineffective assistance of counsel as to this issue, the circuit court did not err by summarily dismissing the claim.
B.
Next, Davis claimed that counsel were ineffective because they advised him to plead guilty based on a misunderstanding of the law. Davis asserted that counsel negotiated a plea agreement with the State whereby the State would dismiss Count II of the indictment, which charged Davis with murder made capital because it was committed during the course of a robbery,'a violation of § l-3A-5-40(a)(2), Ala. Code 1975, in exchange for Davis’s pleading guilty to Count I, which charged Davis with murder made capital-because.two or more persons were murdered by one act or pursuant to one scheme or course of conduct, a violation of § 13A-5-40(a)(10), Ala.Code 1975. According to Davis, counsel advised him to. enter into the agreement based on their erroneous belief that the State would be precluded from relying on the robbery that was the basis of Count II as an aggravating circumstance pursuant to § 13A-5-49(4), Ala.Code 1975.
A review of the- record reveals that Davis’s counsel did attempt to prevent the State from relying on the robbery as an aggravating circumstance. Before the beginning of the penalty phase, counsel for Davis stated:
*431 “Your Honor, we would object to the State offering or attempting to offer aggravating circumstances being in the Code as No. .4 [murder during a. robbery]. Based on the fact or at least the partial fact that the indictment charging the defendant with robbery or attempt to rob was dismissed by the State.... It would be inadmissible now for the State, after dismissing that count of the indictment, to come back and use it as an aggravating circumstance.”
(Rl. 352.) The trial court overruled the objection.
In his petition, Davis claimed that counsel were deficient for failing to understand the applicable law. Specifically, he argued that, “[b]eeause the plea bargain agreement negotiated by trial counsel was premised on an erroneous belief that dismissal of Count II would preclude the State from attempting to establish the murder-robbery aggravating factor under Ala.Code [1975] § 13A-5-49, counsel’s assistance in connection with securing the plea agreement was deficient.” (C. 1613.) Davis claimed that counsel’s alleged deficiency prevented him from making a knowing, intelligent, and voluntary decision to plead 'guilty and that, but for counsel’s alleged error, there is a reasonable probability that the determination of his guilt and his sentence would have been different.
In its order dismissing Davis’s petition, the circuit court noted that Davis was informed during the guilty-plea colloquy that the State would “seek to prove beyond a reasonable doubt that the capital offense was committed during the commission or an attempt to commit a robbery.” (Rl. 13-14.) Thus, the circuit court concluded that the record refuted Davis’s claim that his plea was not knowingly, intelligently, and voluntarily made. Accordingly, the circuit court found the claim to be merit-less.
On appeal, Davis argues that the circuit court’s ruling was improper. Davis contends that the fact that the trial court informed him that the State would “ ‘seek to prove’ the robbery-murder aggravating circumstance ... does not disprove [his] allegation that counsel misadvised him that the State would be unable to establish it.” (Davis’s brief; at 62-63.) Although we agree that the record does not necessarily refute Davis’s claim that counsel gave' him erroneous advice, we note that “where the judgment of the circuit court denying a petition for post-conviction relief is correct for any reason, it will be affirmed by this Court, even if the circuit court stated an incorrect reason for its denial.” Swicegood v. State, 646 So.2d 159, 160 (Ala.Crim.App.1994).[5]
As we noted earlier, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, this Gburt has held:
“ ‘[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. ‘ In particular, a court need not determine whether counsel’s performance was deficient before examining the prejudice suffered by the *432 defendant as a result of the alleged deficiencies.’ ”
Smith v. State, 122 So.3d 224, 235 (Ala.Crim.App.2011), quoting Strickland, 466 U.S. at 697.
A review of Davis’s petition reveals that he failed to allege that he was prejudiced by counsel’s erroneous advice. “When an appellant’s claim of ineffective assistance of counsel arises from alleged errors committed by counsel in the guilty plea process, the prejudice prong of the Strickland analysis is satisfied by the appellant’s establishing ‘that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ ” Culver v. State, 549 So.2d 568, 572 (Ala.Crim.App.1989), quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Although Davis asserted that, “but for counsel’s deficient performance there is a reasonable probability that the determination of guilt and sentence would have been different” (C2, 247), he did not assert that he would have otherwise insisted on going to trial. Accordingly, even if the allegations in Davis’s petition are true, he would not be entitled to relief because they do not establish that Davis was prejudiced, as required under Strickland. Therefore, the circuit court did not err by summarily dismissing this claim. See Rule 32.7(d), Ala. R.Crim. P.
C.
Next, Davis claimed that his counsel were ineffective during the guilt phase of his trial for the following reasons: (1) failing to request a jury instruction on heat-of-passion manslaughter, (2) failing to object to the prosecutor’s erroneous statement that intoxication is not a defense to capital murder, and (3) failing to object to the trial court’s erroneous jury instruction that the State’s burden of proof was “merely beyond a reasonable doubt.” (Davis’s brief, at 66.) In dismissing Davis’s petition, the circuit court found that these claims were meritless.
1.
When a defendant pleads guilty to capital murder, he is not entitled to jury instructions on lesser-included offenses. In Hutcherson v. State, 727 So.2d 846, 854 (Ala.Crim.App.1997), the appellant raised a similar argument.
“The appellant’s second argument is that the trial court erred in refusing to charge the jury on the lesser included offense of felony murder. After the State rested, the appellant asked the trial court to instruct the jury on the lesser included offense of felony murder because there was evidence' that he did not intend to commit a murder at the time he committed the burglary. In response, the trial court stated as follows:
[[Image here]]
“ ‘This is a guilty plea. This is not a trial. I don’t think he is entitled to be convicted on lesser-included offenses on a guilty plea to á capital case. If the jury decided that the State didn’t prove beyond a reasonable doubt, what I would do is let him — set aside the plea and try the case on the merits. I mean, that’s— unless the State has some objection, that’s going to be the procedure that I would employ. Because this is not, in fact, a trial. The State, under the statute, must prove beyond a reasonable doubt that the Defendant committed the capital offense.
“ T will mention to the jury that if there are lesser-included offenses, then they would not return a verdict of guilty. Although the opinion that was decided refers to other possible verdicts.
*433 [[Image here]]
“ ‘I am not going to allow the Defendant to take advantage of a situation where we have not tried the case but have tried it as a guilty plea.5
“Although this was a non-jurisdictional matter which was waived by the appellant’s guilty plea, we note that the trial court’s analysis was correct. As the State correctly asserts, the jury was empaneled to determine only whether the State had proven beyond a reasonable doubt that the appellant was guilty of burglary-murder. Therefore, the appellant was not entitled to have the jury instructed on lesser included offenses.”
Although the trial court in this case did instruct the jury on the ■ lesser-included offense of manslaughter (Rl. 330-32), it was not required to do so.[6]
This Court has held that counsel is not ineffective for failing to raise a meritless claim. See Patrick v. State, 680 So.2d 959, 963 (Ala.Crim.App.1996) (“The law does not require a useless act.... ‘Counsel is not ineffective for failing to file a motion for which there is “no legal basis.” ’ Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr.App.1988), quoting United States v. Caputo, 808 F.2d 963, 967 (2nd Cir.1987).”); see also Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) (“[Cjounsel could not be ineffective for failing to raise a baseless objection.”). Therefore, Davis’s counsel was not deficient for failing to request a jury instruction on heat-of-passion manslaughter. Accordingly, Davis’s claim did not satisfy the first prong of the standard set out in Strickland and the circuit court did not err by summarily dismissing it. See. Rule 32.7(d), Ala. R.Crim. P.
2.
Similarly, Davis’s argument regarding counsel’s failure to object during the State’s Closing argument is without merit. During the State’s rebuttal to Davis’s closing argument, the prosecutor stated:
“Let me say this: the last time I looked, and I have been doing this a long time. I didn’t see anything on the criminal books in Alabama that said that because a person has a drug problem or a history of drug use, that that sets up a defense for killing two people. It don’t exist.”
(Rl. 307.) Later, the prosecutor said:
“I don’t care if he is whacked out on all the cocaine in the world. That is not a . defense under Alabama law for killing two people — gunning them down, taking everything they own to swap for crack.”
(Rl. 314.) Davis argued that these comments were improper and that his attorneys were ineffective for failing to object and request a curative instruction.
However, the prosecutor’s remarks were not an incorrect statement of the law. Section 13A-3-2(a), Ala.Code 1975, provides:
“Intoxication, is not a defense to a criminal charge, except as provided in subsection (c)[7] of this section. However, intoxication, whether voluntary or involuntary, is admissible in evidence whenever it is relevant to negate an element of the offense charged.”
Thus, the prosecutor’s assertion that voluntary intoxication is not a defense under Alabama law was correct. Accordingly, counsel could not .have been ineffective for failing to object. See Bearden v. State, *434 825 So.2d at 872 (“[C]ounsel could not be ineffective for failing to raise a baseless objection.”).
To the extent that the prosecutor’s comments could have been, misleading, we do not find that counsel’s failure to object constituted deficient performance. The trial court instructed the jury that “what the lawyers have said to you and what they have suggested to you in opening statements, closing statements, and what they have said during questions that have been asked is not evidence.” (Rl. 316.)
Additionally, the trial court instructed the jury regarding voluntary intoxication as follows:
“If because of voluntary intoxication of the defendant, you are not convinced beyond a reasonable doubt that the defendant possessed the necessary intent to kill either of those individuals whose death has been made the subject of the indictment, then you could not find the defendant guilty of capital murder because he lacked that specific intent to kill required of capital murder.” .
(Rl. 332.) Thus, the trial court clarified any confusion that might have existed regarding the law as it pertains to intoxir cation, and a jury is presumed to have followed a trial court’s instructions. See Mitchell v. State, 84 So.3d 968, 983 (Ala.Crim.App.2010), quoting Frazier v. State, 758 So.2d 577, 604 (Ala.Crim.App.1999) (“ 'The jury is presumed to follow the instructions given by the trial court/”)’.
Accordingly, even if Davis’s counsel were deficient for failing to object to the prosecutor’s comments, we do not find that Davis suffered prejudice. Because Davis was not prejudiced by the alleged deficiency, he did not satisfy the second prong of the Strickland standard. Therefore, Davis’s claim was, therefore, meritless, and the circuit court properly dismissed it. See Rule 32.7(d), Ala. R.Crim. P.
3.
Finally, Davis claimed that his counsel were ineffective for failing to object to the trial court’s jury instructions regarding reasonable doubt. Specifically, Davis claimed that the trial court “improperly diminished the reasonable doubt standard” by telling “the jury twice that the State’s burden of proof was ‘merely beyond a reasonable doubt.’”' (C. 1629, quoting Rl. 318.) Additionally, Davis claimed’ that the following instruction was improper and that counsel was ineffective for failing to object to it: “ ‘If after considering all the evidence in this ease, you have an abiding belief in the guilt of the defendant to a moral certainty, then you are convinced beyond a reasonable doubt.’ ” (0. -1629, quoting. Rl. 319.) According to Davis, the court’s instruction was improper because, he argued, the “moral certainty” language was disavowed by the United States Supreme Court in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
The circuit court found that. the ■ trial court’s instructions, when taken .as a whole, were not misleading and did not diminish the State’s burden of proof. ■ Additionally, the circuit court quoted- this Court’s opinion in Price v. State, 725 So.2d 1003, 1021 (Ala.Crim.App.1997), in which we held that “[tjhe use of the term ‘moral certainty' alone in defining reasonable doubt d[oes] not create the error defined and discussed in Cage v. Louisiana.” Thus, the circuit court held that this ineffectiveness claim was without merit.
A review of the trial court’s jury charge, as a whole, reveals that it clearly and adequately explained the concept of reasonable doubt. To the extent that the inclusion of the word “merely” might have been improper, we do not find that it prejudiced Davis in any way. Also, -as the *435 circuit court noted, we have held that the use of the term “moral certainty,” by itself, does “not create the error defined and discussed in Cage v. Louisiana.” Price, 725 So.2d at 1021. Rather, “it is the use of [that] term in conjunction with other terms, such as ‘grave uncertainty5 and ‘actual substantial doubt,’ that served to lessen the burden of proof.” Id. The trial court did not use those or other similar terms in’ its jury charge in the present case. Because the trial court’s jury charge was not improper, Davis’s counsel could not have been ineffective for failing to raise an objection. See Bearden v. State, 825 So.2d at 872.
Because Davis’s claims regarding counsel’s alleged deficiencies in the guilt phase of his trial were without merit, the circuit court did not err by summarily dismissing them. See Rule 32.7(d), Ala. R.Crim. P.
D.
Next, Davis claimed that his trial counsel were. ineffective at the penalty phase of his trial for failing to investigate and present available mitigating evidence. Specifically, Davis asserted that his counsel had failed to present evidence at the penalty phase regarding the following: Davis’s history of drug abuse and his drug use the night of the offense; Davis’s background, including the severity of his emotional disturbance and his history of head injuries; and Davis’s “adjustment to incarceration and lack of future dangerousness.” (C. 1630.) Davis argued that, if his counsel had presented such evidence, there is a reasonable probability that the determination of his sentence would have been different.
However, a review of the record reveals that Davis’s counsel called nine witnesses during the penalty phase, including Davis’s pastor, family members, and friends, who testified regarding Davis’s feelings .of regret for his actions. Counsel also presented testimony that Davis was extremely upset about the recent death of his brother at the time of the killings. Additionally, testimony, was elicited suggesting that Davis was intoxicated on the night of the offense and that Davis was a good person when he was not under -the influence of drugs and alcohol.
In fact, the trial court found the existence of the statutory mitigating circumstance in § 13A-5-51(6), Ala.Code 1975. In its sentencing order, the court noted that there was evidence suggesting that Dávis, although “not so impaired as to be totally unaware of the criminality of [his] conduct,” was “substantially impaired” by alcohol and crack cocaine. (S. 5-6.[8]) Additionally, the trial court found the existence of two nonstatutory mitigating circumstances: that Davis was a good family member to his mother and siblings and that Davis possibly suffered from emotional problems due to the death of his brother. (S. 6-7.)
Based on these facts, we find that, even if all the allegations in Davis’s petition are true, he has failed to establish that his counsel were deficient under the first-prong of Strickland. Although trial counsel may not have presented all the mitigating evidence that was available to them, counsel did present substantial evidence suggesting that Davis felt remorse for his actions and that his intoxication played a significant role in the offense. This was consistent with the trial strategy discussed in Part III.A. of this opinion. Although that strategy was ultimately unsuccessful, this Court
*436 “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91] at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland v. Washington, 466 U.S. at 689. Accordingly, the circuit court did not err by summarily dismissing Davis’s claim that his counsel were ineffective in presenting mitigating evidence. See Rule 32.7(d), Ala. R.Crim. P.
Additionally, we note that, during a pretrial hearing, the trial court asked defense counsel whether they had discussed with Davis “the fact that mitigating circumstances can be anything related to his childhood, his upbringing, [and that] any good parts of his life can be used for mitigation.” (C. 173.) One of Davis’s defense counsel stated that he discussed those matters with Davis but that Davis “did not want to bring or discuss with me certain aspects of his past.” (C. 173.) Counsel went on to state that they “brought in an investigator who made a quite extensive investigation into the background of the defendant.” (C. 174.) Thus, it appears that Davis did not cooperate with counsel’s attempt to investigate his background for possible mitigating evidence. Under the doctrine of invited error, “the appellant cannot allege as error pi-oceedings in the trial court that were invited by [him] or that were a natural consequence of [his] own action.” Inmin v. State, 668 So.2d 152, 155 (Ala.Crim.App.1995), citing Bamberg v. State, 611 So.2d 450, 452 (Ala.Crim.App.1992).
E.
Next, Davis further claimed that his trial counsel were ineffective during the penalty phase of his trial for four reasons: (1) failing to request instructions to guide the jury in its consideration of nonstatutory mitigating evidence; (2) failing to request a limiting instruction regarding the use of prior-bad-acts evidence; (3) failing to object to and request a curative instruction on the prosecutor’s alleged improper argument regarding nonstatutory aggravation; and (4) failing to argue remorse and acceptance of responsibility as mitigation at the judicial sentencing proceeding.
1.
First, Davis claimed that his counsel were ineffective for failing to request instructions to guide the jury in its consideration of nonstatutory mitigating evidence. During the penalty phase, Davis presented testimony demonstrating that he was a nice person when he was not under the influence of drugs and alcohol. To rebut that evidence, the State introduced six prior felony convictions that were marked as State’s exhibits 27 through 32. The State also introduced a prior conviction for second-degree robbery in order to establish the aggravating circumstance that Davis had been convicted of a felony involving the use or threat of violence to another person pursuant to § 13A-5-49(2), Ala.Code 1975. That conviction was marked as State’s exhibit number 26. The trial court gave the following instruction to the jury regarding how each of those convictions were to be considered:
“At this time, I’m going to instruct you that certain prior offenses are being offered by the State. The purpose of these prior offenses that are marked Exhibits No. 27 through 32, and they will be clipped together — the purpose of those offenses as evidence may not be *437 considered by you as an aggravating circumstance. The purpose of those exhibits being offered into evidence and questioning concerning those offenses goes rather to the State’s burden of disproving by a preponderance of the evidence certain facts and allegations made by the defendant in mitigation of a sentence of death.
“The State is allowed and has a duty to affirmatively disprove by a preponderance of the evidence mitigating circumstances. That is the only ‘purpose you may consider Exhibits No, 27 through 32. Do not confuse that with Exhibit No. 27, [sic] which is a certified copy of a conviction for robbery in the second degree that was admitted in support of and was admitted as proof of an aggravating circumstance that the State is required to prove beyond a reasonable doubt. It is very important you keep these convictions and their purposes separately.”
(Rl. 452-54) (emphasis added). Davis contended that this instruction caused the jury to consider all of his prior convictions as proof of aggravating circumstances. He argued that his counsel were ineffective for not objecting to or otherwise noting the trial court’s misstatement regarding the exhibit numbers.
However, when the trial court gave the jury its final instructions, the court correctly stated how each conviction should be used:
“As I told you toward the end of this hearing, the State has introduced certain exhibits which are certified copies of prior convictions of the defendant for certain felony offenses. These are Exhibits 27 through 32, and I hope they are in some sort of a clip or something. These exhibits may not be considered by you as aggravating circumstances. That is as circumstances tending to indicate the defendant should be punished by death. The State introduced these exhibits, rather in support of their burden of disproving a mitigating circumstance that may exist based on the defendant’s prior works or the defendant’s good character or prior good reputation, which it is the burden of the State to disprove by a preponderance of the evidence. That was the only purpose for which those exhibits were offered, and the only purpose for which those exhibits may be considered.
“How Exhibit No. 26, however, was the certified copy of the robbery conviction which the State introduced in support of proving its aggravating circumstances of the defendant’s prior conviction involving the use or threat of violence to a person.”
(Rl. 506-08.)
It is well settled that “ ‘[t]he jury is presumed to follow the instructions given by the trial court.’ ” Mitchell v. State, 84 So.3d 968, 983 (Ala.Crim.App.2010), quoting Frazier v. State, 758 So.2d 577, 604 (Ala.Crim.App.1999). Davis did not plead any facts indicating that the jury did not follow the trial court’s instructions or that the jurors were otherwise confused by the judge’s earlier misstatement. Therefore, Davis failed to demonstrate that he was prejudiced by counsel’s failure to object and, thus, did not meet the second prong of the Strickland standard. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Accordingly, he was not entitled to relief on that claim, and the circuit court did not err by summarily dismissing it. See Rule 32.7(d), Ala. R.Crim. P.
Moreover, on direct appeal, Davis argued that these instructions were “confusing in relation to the instruction regarding the use of a prior robbery conviction as an aggravating circumstance.” Davis v. State, 740 So.2d at 1122. He further ar *438 gued “that , the-jury may have been confused as to the proper ‘use’ of the six prior convictions.” Davis v. State, 740 So.2d at 1122. This Court held:
“[•T]he trial court was careful to distinguish the robbery conviction‘from the other , prior convictions. It explicitly stated that the robbery conviction was being used to prove an aggravating circumstance and that the other six convictions were being used to rebut mitigating evidence :the 'defense introduced concerning [Davis’s] good character or reputation. In addition, the trial court properly defined the State’s burden of disproving a mitigating circumstance by a preponderance of the evidence. § 13A-5-45(g), Ala.Code 1975. The trial court correctly stated the law and the facts of the case, and its instructions were not confusing or ■ misleading. Therefore, we find no plain error in the trial court’s instructions.-” ,
Davis v. State, 740 So.2d at 1123-24. Thus, even if counsel were deficient for failing to note the trial court’s misstatement and request a curative instruction, Davis was not prejudiced by that failure.
2.
Second, Davis alleged that his counsel were ineffective -for failing to request a limiting instruction regarding the use of prior-bad-acts evidence.. As noted in the-previous subsection, the State offered several prior felony convictions in order to rebut Davis’s mitigation evidence. Specifically, the.State introduced a 1985 conviction for third-degree burglary and a 1986 conviction for third-degree robbery. The State also introduced a 1980 conviction for second-degree robbery that was the, basis for one of the aggravating eir- ■ cumstances it sought to prove. Davis contended that his counsel were ineffective for failing to request an instruction prohibiting the jury from considering .these prior convictions “as bad acts which may not be used to establish conduct in conformity therewith.” (C. 1633.) Davis further argued that, “[g]iven the similarity, between [the] prior convictions offered by the State and the aggravating circumstance the State .was seeking to prove pursuant to § 13A-5~49(4), there is a reasonable probability that the jury improperly considered the prior crimes as aggravating evidence.” (C. 1633.)
However, a review of the record reveals that the trial court instructed the jury as to how it was to consider each, of the convictions offered by the State. Specifically, the trial court told the jury that exhibits 27 through 32[9] “may not be considered by you- as aggravating circumstances.” (Rl. 507.) The court further informed the jury that the State offered those convictions “in support of [its] burden of disproving a mitigating circumstance that may exist based on the defendant’s prior works or the defendant’s good character or prior good reputation.... That was the only purpose for which those exhibits were offered, and the only purpose for which those exhibits may be considered.” (Rl. 507.) Additionally, the court gave the following instruction: “You may not consider in your deliberations certain other circumstances which you feel would justify a sentence of death other than the two aggravating circumstances alleged by the State. You may not consider any other circumstances as an aggravating circumstance?’ (Rl. 500.)
Again, Davis failed to allege any facts to suggest that the jury did not follow the *439 trial court’s instructions or that it otherwise gave improper consideration to the prior felonies offered by the State. Therefore, Davis failed to demonstrate that he was prejudiced by counsel’s failure to request such an instruction and, thus, did not meet the second prong of the Strickland standard. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Accordingly, he was not entitled to relief on that claim, and the circuit court did not err by summarily dismissing it. See Rule 32.7(d), Ala. R.Crim, P.
3.
Next, Davis alleged that counsel were ineffective for failing to object,to and request a curative instruction on the prosecutor’s alleged improper argument. During closing arguments, the prosecutor argued that Davis was “a career criminal” who “has been committing crimes against this state since 1980.” (Rl. 464.) Davis claimed that those comments were offered to improperly argue that a significant criminal history is an aggravating circumstance.
However, those comments were made during the State’s rebuttal and were not improper. The State had a duty to rebut the mitigating evidence proffered by Davis indicating that Davis was a person of good character. The ' prosecutor’s comments served that purpose. Accordingly, counsel was not ineffective for failing to raise a baseless objection. See Bearden v. State, 825 So.2d at 872 (“[C]ounsel could not be ineffective for failing to raise a baseless objection.”).
Additionally, there is nothing in the record to suggest that the State was attempting to mislead the jury into believing that Davis’s criminal history was an aggravating circumstance. The prosecutor’s comment was a proper and legitimate inference from the evidence. As noted above, the trial court instructed the jury regarding aggravating circumstances, arid Davis failed to allege any facts that, if true, would overcome the presumption- that the jury followed the courts instructions. Mitchell v. State, 84 So.3d 968, 983 (Ala.Crim.App.2010), quoting Frazier v. State, 758 So.2d 577, 604 (Ala.Crim.App.1999) (“ ‘The jury is presumed to follow the instructions given by the trial court.’ ”).
Davis also pointed to comments that the prosecutor made that, according to Davis, were “open appeals to emotion, prejudice, and personal opinions of Mr. Davis’s worth,” (C. 1635.) Specifically, Davis takes issue with the following statements:
“How many people we got to kill in this country before Alabama law is going to apply, and we send someone to die? How many times we got to be incarcerated or in touch with the legal system before we look at someone and say they are a defected [sic] human being. Because that is what he is. Defective human beings, that is what we are here to decide about aren’t we? If we cut through the muck,- dirty burned out house where two men are dead sleeping in their own bed. It is a dirty case. He is defective and he is here for your consideration.
[[Image here]]
“All these seven or eight convictions — I don’t know anybody Who has had any more take with the system that could have had help. How many lives does it take for the Alabama law to apply?
[[Image here]]
“[The Trussville police] were concerned about a man that has this.kind of history for you to consider that [defense counsel] said ‘We are making him look bad.’ We didn’t make him look bad. He made himself look bad.”
(Rl. 486-87, 489, and 490.) According to Davis, his counsel were ineffective for failing to object to those comments.
*440 In Ex parte Parker, 610 So.2d 1181, 1183 (Ala.1992), the Alabama Supreme Court held that “whether the prosecutors’ remarks constituted plain error depended on whether those remarks, when viewed in the context of the entire closing argument and in the context of the entire trial, undermined the fundamental fairness of the trial and, thus, constituted a miscarriage of justice.” Additionally, it is not improper for a prosecutor to make a general appeal to law enforcement. See Ex parte Waldrop, 459 So.2d 959, 962 (Ala.1984) (“In Alabama, the rule is that a district attorney in closing argument may make a general appeal for law enforcement.”).
We agree with the circuit court’s finding that the isolated comments quoted by Davis, when viewed in the context of the entire trial, were not improper. Accordingly, counsel were not ineffective for failing to raise an objection. See Bearden v. State, 825 So.2d at 872.
4.
Finally, Davis claimed that his counsel were ineffective for failing to argue at the sentencing hearing Davis’s remorse and his. acceptance of responsibility. The circuit court found that this assertion was refuted by the record and summarily dismissed the claim.
At the sentencing hearing, the State waived any opening statements but reof-fered and incorporated by reference the prior testimony and evidence from the trial. The court stated that it was “obviously aware of all the testimony” and that it had a transcript of all the proceedings. Davis’s counsel presented evidence during the penalty phase regarding his remorse and acceptance. Davis’s pastor, Greg Hook, testified that Davis “had been real up front that he did this crime, and he was the one involved, and he had pulled the trigger.” (Rl. 379.) Hook also testified that Davis had “been very remorseful.” (Rl. 379.) Thus, there was evidence before the trial court demonstrating that Davis expressed remorse and accepted responsibility for the crimes.
Additionally, Davis personally made a statement at the sentencing proceeding. Davis stated: “I want to apologize for what I did to the families of the victims,” (Rl. 523.) After a brief recess, Davis asked to speak again, and he stated:
“I didn’t know if the victims’ families heard me earlier. I would like to apologize to y’all. I wish there was some way I could bring them back. I’m sorry it ever happened. I just wanted y’all to know that. I know it will not ease the pain.”
(Rl. 524-25.) Therefore, we find that the trial court was aware that Davis accepted responsibility for the crimes and expressed remorse for his actions. Davis’s counsel offered testimony, through Davis, that he was remorseful for his actions. Accordingly, Davis’s claim is refuted by the record, and the circuit court was correct to summarily dismiss it. See Rule 32.7(d), Ala.R.Crim. P.
IV.
Next, Davis contended that his guilty plea was not knowing, intelligent, and voluntary for four reasons: (1) his trial counsel were ineffective; (2) Davis was not competent to understand and appreciate the nature and consequences of the plea; (3) Davis was not adequately informed of the nature of the charges against him; and (4) Davis was not adequately informed of the defenses available to him.
In support of the first and fourth allegations, Davis ■ incorporated his arguments from paragraphs 116 to 135 of his petition. Those arguments were addressed in Part III of this opinion. Because we have determined that those claims were properly dis *441 missed by the circuit court, we hold that Davis’s first and fourth claims were properly dismissed for the same reasons stated in Part III. We will now address Davis’s second and third arguments.
A.
In his petition, Davis claimed that his guilty plea was not entered into knowingly, intelligently, and voluntarily because, he argued, he lacked the competence “to understand and appreciate the nature and consequences of the plea at the time he entered it.” (C. 1644.) Specifically, Davis claimed that, at the time he entered his plea, he was “suffering from severe depression, borderline intelligence, and withdrawal from both legal and illegal drugs.” (C. 1645.) According to Davis, the combination of those factors impaired his mental state to the point that he was unable to consult with his attorneys with a reasonable degree of rational understanding. Davis also claimed that his mental condition rendered him unable to understand the nature and consequences of his guilty plea. In support of these allegations, Davis recited a detailed history of his mental illness, drug abuse, and low intelligence. Davis also pointed to an exchange in a pretrial hearing in which he expressed to the court his desire “‘to plead guilty to the death penalty’ because he was unable to smoke and watch television at the St. Clair County Jail.” (C. 1647.)
In its order dismissing this claim, the circuit court noted that Davis had been examined by two clinical psychologists before trial. A review of the record reveals that both psychologists determined that Davis was competent to stand trial. Additionally, the circuit court found “nothing in the colloquy between Davis and Judge Austin giving the slightest indication that Davis was incompetent to plead guilty.” (C. 2052.)
On appeal, Davis argues that the circuit court’s reliance on the fact that Davis was competent to stand trial was “plainly erroneous.” (Davis’s brief, at 109.) He compares his case to the facts in Teasley v. State, 704 So.2d 104 (Ala.Crim.App.1997). In Teasley, the petitioner alleged that his guilty plea was not voluntary because “he was under the influence of a number of medications, including Prozac, lithium, and Valium and, consequently, he was unable to understand the nature of the charges against him and the consequences of pleading guilty to these charges.” 704 So.2d at 105. Davis asserts that, in Teas-ley, “the circuit court summarily dismissed the petition, but because the petitioner stated a facially meritorious claim, this Court remanded the case for- further proceedings.” (Davis’s brief, at 110.)
However, in Teasley, the circuit court summarily dismissed the petition with an entry on the case-action summary and a notation on the petition that it had been “ ‘considered and [was being] denied.’” 704 So.2d at 104. The State requested that this Court remand the case so that the circuit court could “enter an order setting forth the reasons for its summary dismissal of the petition.” 704 So.2d at 104. We also noted that “[i]f the circuit court finds that further aetion is necessary, it may hold an evidentiary hearing or take evidence by any means set forth in Rule 32, Ala. R.Crim. P.” 704 So.2d at 105. On remand, the circuit court found, based on its knowledge of the proceedings in question, that Teasley’s claims were meritless and denied his petition. This Court affirmed that- decision on return to remand. We did not hold, as Davis suggests, that Teasley stated a facially meritorious claim because he alleged that he was under the *442 influence of prescription medications when he entered his guilty plea,
Davis also cites Godinez v. Moran, 509 U.S. 389, 401, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), for the proposition that competence to stapd trial “is .not all that is necessary before [a defendant] may be permitted to plead -guilty — ” Godinez goes on to note the difference between a competency determination and a determination as to whether a defendant’s decision to plead guilty is -knowing and voluntary:
“The focus of a competency- inquiry is the defendant’s mental capacity; the question is whether he has the ability to understand the proceedings. See Drope v. Missouri, supra, 420 U.S. [162], at 171 [(1975)](defendant is incompetent if he ‘lacks the capacity to understand the nature and object of -the -proceedings against him’Xemphasis ■ added), ' The purpose of the -knowing and voluntary’ inquiry, by contrast, is to determine whether the defendant actually does understand the Significance and consequences of a particular decision and whether the decision is uncoerced.”
509 U.S. at 401 n. 12.
As the circuit court noted, two psychologists found Davis to be competent to stand trial. Thus, the only question to be-resolved by the trial court was' whether Davis’s plea was knowing and voluntary, i.e., whether Davis understood the significance and consequences of his guilty plea. Both this Court and the Alabama Supreme Court found that “[t]he trial court engaged [Davis] in a thorough colloquy, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Rule 14.4, Ala. R.Crim. P., during which [Davis]- admitted his guilt and expressed his desire to enter á guilty plea.” Davis v. State, 740 So.2d at 1117; Ex parte Davis, 740 So.2d at 1136 (“The trial court engaged Davis in a thorough colloquy, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Rule 14.4, Ala. R.Crim. P., during which Davis admitted his guilt and expressed his desire to enter a guilty plea.”). The purpose of such a colloquy is for the trial court to ascertain, among other things, “that the defendant has a full understanding of what a plea of guilty means and its consequences” and “that-the plea-is voluntary and not the result of force, threats, or coercion, nor of any promise apart from the- plea agreement that has been disclosed to the court....” Rule 14.4(a), Ala. R.Crim. P.
We have reviewed Davis’s plea colloquy and have determined that it was adequate to ensure that Davis’s plea was knowing and voluntary. During the plea colloquy, the following exchange took placé:
“THE COURT: ... What I want you to do, Mr. Davis, and before I could accept this plea, I have to make sure, you fully understand what your rights are in this case, and that you understand what you are pleading guilty to and the effects of your plea, The offense in this case that you, are charged with, is the offense of capital murder. You are specifically charged with .intentionally causing the death — Count I is the two individuals, in the same course of conduct. That is the capital murder charge that you will be entering your plea to. Do you understand that?
“[Davis]: Yes, sir.
[[Image here]]
“THE COURT: That shouldn’t be the first time you have heard these rights, since .you and your attorneys haye gone over these rights. Are you presently under .the influence .of any, alcohol, drugs, narcotics or medication?
“[Davis]: No, sir.
*443 “THE COURT: And you understand what you are doing?
“[Davis]: Yes, sir.
“THE COURT: The offense you are charged with is the offense of capital murder. There is a section here that delineates this as a Class A felony with some penalty ranges. Actually, capital murder is its own special offense. It is an intentional murder. The penalties for capital murder are that if you are convicted or if you plead guilty, the penalties for capital murder are only two options — either life in prison without parole, or a sentence of death. Do you understand what you are charged with and the maximum and minimum penalties for that?
“[Davis]: Yes, sir,”
(Rl. 5-9.) ’ After the jury was empaneled, the trial court addressed Davis a second time: ■ ' ■
“THE COURT: ... One thing I did not talk with you in any detail with is thfe fact that you are charged with this offense, and that the only potential punishment for this offense, if you are found guilty, would be life without parole and death. If you went to trial on these offenses in front of a jury, a jury would have the opportunity to consider whether you were ‘guilty instead of a capital offense of any lesser included offenses. I would anticipate in this case that the' issue to be submitted to "the-jury — lesser included offenses of murder and possibly manslaughter. It would be any other lesser included offenses supported by the evidence in this case. Do you understand a jury would have the option of determining ■ whether or not you were guilty instead of a capital offense, of-a lesser included offense,, Have your lawyers talked to you about that? .
“[Davis]: Yes, sir.
[[Image here]]
“THE COURT: ... Do you have any questions as to what your rights are in this case? .
“[Davis]: No, sir.
“THE COURT: Since this morning, are you under the influence of any alcohol, narcotics, drugs or medications at all?
“[Davis] No, sir.
“THE COURT: Are you pleading guilty voluntarily and of your own free will?
“[Davis]: Yes, I am.”
(R. 44-47.) Nothing in the record suggests that Davis was unable to understand the nature and consequences of his guilty plea. This Court is convinced that Davis’s claim that his plea was not entered knowingly and voluntarily is without merit, and, therefore, the circuit court did not err by summarily dismissing it. See Rule 32.7(d), Alá. R.Crim. P.
B.
Davis next argued that his plea was not knowing and voluntary because, he contended, he was not adequately informed of "the nature of the charges against him. However, a review of the-record reveals that the trial court thoroughly-informed Davis of the nature and elements of capital murder. In addition to the above-quoted excerpts from Davis’s guilty-plea colloquy, the trial court stated the following: . -.
‘You are charged in Count I of the indictment with the offense of murder wherein two- or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct.... In order for a jury to And you guilty of murder wherein two or more persons are murdered, the jury would have to find that you intentionally caused the death of two or more persons; and that in intentionally causing the death of two. or more persons, you *444 did so by one act or you did so by one scheme or course of conduct.”
(Rl. 9-10.) Davis indicated that he understood the charges.
However, in his petition,. Davis argued that neither the court nor his counsel defined for him the element of intent. According to Davis, had he understood the meaning of the word intent, he would not have pleaded guilty. Therefore, he argued, his plea was not knowingly, intelligently, and voluntarily entered. Davis cited Henderson v. Morgan, 426 U.S. 637, 644-45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), for the proposition that a plea cannot be voluntary unless a defendant has adequate notice of the nature of the charge against him. Davis appears to argue that Henderson requires that a trial court define the element of intent in a guilty-plea colloquy. However, the Supreme Court in Henderson found as improper that “[tjhere was no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with respondent, and no reference of any kind to the requirement of intent to cause the death of the victim.” 426 U.S. at 642-43.
Thus, Henderson is distinguishable from the present case. A review of the record reveals that the trial court informed Davis that intent was a required element of capital murder multiple times. Before accepting Davis’s plea, the trial court asked:
“Are you pleading guilty to intentionally causing the, death of John Fikes by shooting him with a rifle and intentionally causing the death of Kenneth Douglas by shooting him with .a rifle pursuant to one scheme or course- of conduct? Are you pleading guilty to that because you are guilty?”
(Rl. 49.) Davis answered -in the affirmative. Thus, the trial court satisfied the requirements of Henderson and, as noted, satisfied the requirements of Rule 14.4, Ala. R.Crim. P., and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Davis has cited no other caselaw that specifically requires a trial court to explicitly define the element of intent when engaging a defendant in a guilty-plea colloquy. Accordingly, we find that Davis’s claim that his plea was not knowing and voluntary because he was not given the definition of intent is without merit. Therefore, the circuit court was correct to summarily dismiss the claim. See Rule 32.7(d), Ala. R.Crim. P.
V.
Next, Davis claimed that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he, asserted that the State withheld evidence indicating that there was $2,000 in cash on a nightstand located near the body of one of the victims, Fikes, and that the State had evidence indicating that the victims could have been shot with a single gun as opposed to two guns. According to Davis, that evidence could have been used by defense counsel to, demonstrate that Davis lacked the specific intent to kill the victims. Davis also claimed that the State withheld evidence indicating that, one of the victims had a violent temper. Davis claimed that this evidence could have been used to establish that he had acted in self-defense or that he was guilty only of heat-of-passion manslaughter. Davis asserted that this evidence was not known to him or his counsel before trial or in time to file a posttrial motion and that it could not have been discovered through the exercise of reasonable diligence.
The circuit court held that these claims were procedurally barred. Additionally, the circuit court held that Davis’s claim regarding the $2,000 was meritless and that *445 his remaining claims lacked the specificity required by Rule 32.6(b), Ala. R.Crim. P. In addressing each of these claims, we note that this Court may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason. See Lee v. State, 44 So.3d 1145, 1149 (Ala.Crim.App.2009).
A.
In his first claim, Davis contended that the information regarding the $2,000 on the victim’s nightstand “was exculpatory and material on the issues of whether Mr. Davis was too intoxicated to form the specific intent to murder the victims and whether Mr. Davis harbored the specific intent to steal from the victims.” (C. 1653.) According to Davis, the fact that he “ignored $2,000.00 that was sitting on a table in the house would have demonstrated that Mr. Davis was severely intoxicated and incapable of forming the specific intent to kill.” (C. 1653.) However, the evidence at trial established that, after Davis shot Douglas in the living room, Davis heard someone moving in Pikes’s bedroom and fired a gun into the bedroom. There was no evidence to suggest that Davis ever entered Fikes’s bedroom. Accordingly, the evidence did not establish that Davis “ignored” the $2,000.
In order to be entitled to relief on a Brady claim, a petitioner must show that the suppressed evidence was “material either to guilt or to punishment_” Brady, 373 U.S. at 87. “Such evidence is material ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’” Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), quoting U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
There was ample evidence presented at trial establishing that Davis stole numerous other items from the victims, including firearms and fishing equipment. Because there was no evidence at trial indicating that Davis went into Fikes’s bedroom, the fact that officers found money on Fikes’s nightstand would not have changed the result of Davis’s trial and was not material to his guilt or punishment. Accordingly, even if the allegations in this section of Davis’s petition are true, he has failed to state a claim for which relief could be granted. Therefore, the circuit court was correct to summarily dismiss the claim. See Rule 32.7(d), Ala. R.Crim. P.
B.
In his next two Brady claims, Davis contended that the State withheld evidence suggesting that Fikes may have been killed with a single gun as opposed to two guns and that Douglas, had a violent temper. Neither of these claims .are. sufficiently specific as required by Rule 32.6(b), Ala. R.Crim. P.
In paragraph 245 of his petition, Davis alleged that “the prosecution had information suggesting that Mr. Fikes was shot with only one gun.” (C. 1654.) However, Davis> failed to specifically identify what that .information was. Without knowing what information Davis was referring to, it is impossible to determine whether the information was material evidence that violated Brady.
In paragraph 246 of his petition, Davis alleged that the State suppressed “police reports, criminal records, and other documents” that demonstrated that Douglas had a violent temper. (C. 1654.) However, Davis failed to specify the contents of those documents. For example, Davis did not state what information was contained in the police reports that would have demonstrated that Douglas had a violent tern- *446 per. Similarly,. Davis did not identify which criminal records he was referring to, nor did he identify any of the “other documents” that Davis claimed demonstrated Douglas’s violent temper. Without knowing the contents of these records, it is impossible to know whether they would have demonstrated that Douglas was a violent man. Accordingly, Davis failed to meet the specificity requirement of Rule 32.6(b), Ala. R.Crim. P„ and the circuit court was correct to summarily dismiss these claims. See Rule 32.7(d), Ala.- R.Crim. P.
VI.
On August 20, 2010, Davis filed an amended motion for postconviction discovery in which he sought various records from the State in order “to ensure a fair Rule 32 hearing.” (C, 1660.) Specifically, Davis sought the following records:
“(1) the complete file of the St. Clair County District Attorney’s Office from Mr. Davis’s capital case, with the exception of work-product materials, including physical evidence, photographs/ statements, and reports;
“(2)' all, records and evidence pertaining to Mr, Davis or his case generated or maintained by the St. Clair Sheriffs Department, which investigated the crime;
“(3) all records pertaining to Mr. Davis or his case' generated or maintained by the Trussville Police Department, which arrested Mr. Davis on the night of the crime;
“(4) all records pertaining to Mr. Davis or his case generated or maintained by the Trussville City Jail, the St. Clair County Jail in Ashville, and the St. Clair County Jail in Pell City, the three jails at which Mr. Davis was held after his arrest;
“(5) the ballistics evidence from Mr. Davis’s case, including that which was relied upon by David Higgins from the Alabama Department of Forensic Sciences; and
“(6) the exhibits from Mr. Davis’s trial, which are in the possession of the clerk of the Circuit Court of St. Clair County, Northern Division, Ashville, Alabama, and the Sheriffs Office of St. Clair County, Northern Division.”
(C. 1560.) Davis claimed that these requests pertained to the following claims: “(1) that his trial counsel were ineffective in violation of Strickland v. Washington) 466 U.S. 668 (1984); (2) that his plea was not knowing, intelligent, and voluntary in violation of Boykin v. Alabama, 395 U.S. 238 (1969); and (3) that the State suppressed exculpatory, material evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).” (C. 1561.) The circuit court denied Davis’s request because it found that Davis had not demonstrated “good cause” as’to why he was entitled to the requested discovery as required by Ex parte Land, 775 So.2d 847 (Ala.2000), overruled on other grounds by State v. Martin, 69 So.3d 94 (Ala.2011).[10] The circuit court noted that its decision to deny the discovery request was made in light of its order summarily dismissing Davis’s petition. This Court has held:
“When ascertaining whether discovery is warranted in a Rule 32 proceeding, the court must first determine whether the Rule 32 petitioner has shown good cause for disclosure of the requested materials. ■ As the Alabama Supreme *447 Court stated, in Ex parte Land, 775 So.2d 847 (Ala.2000):
“ ‘We agree with the Court of Criminal Appeals that “good cause” is the appropriate standard by which ’to judge postconviction discovery motions. In fact, other courts have adopted a similar “good-cause” or “good-reason” standard for the post-conviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1, cert. denied, 522 U.S. 850 (1997)]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postcon-viction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135....
“ ‘. .-.By adopting this standard, we are only recognizing that a trial, court, upon a petitioner’s- showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconvietion discovery does .not provide a petitioner with a right to “fish” through official files and that it “is not a device for investigating possible claims, but a means of vindicating actual claims.” People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief.’
“775 So.2d at 852.
“Though Alabama has had little opportunity to define what constitutes ‘good cause,’ in Ex parte Mack, 894 So.2d 764, 768 (Ala.Crim.App.2003), we quoted with approval an Illinois case the Alabama Supreme Court, relied on in Land—People v. Johnson, 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002):
“‘“A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery.... Accordingly,. the trial court-should allow discovery only if the defendant, has shown- (good; cause,’ considering the issues presented in the- petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on -any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court’s denial of a post-conviction discovery request only for an abuse of discretion, Fair, 193 Ill.2d at 265, 250 Ill.Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying .a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to, a ‘fishing expedition.’ ” ’
“894 So.2d at 768-69 (quoting Johnson, 205 Ill.2d at 408, 275 Ill.Dec. at 836-37, 793 N.E.2d at 607-08).”
*448 Jackson v. State, 910 So.2d 797, 801-02 (Ala.Crim.App.2005).
In its order, the circuit noted that Davis was not entitled to discovery because the claims for which he sought discovery were either meritless or procedurally barred. Because we have determined in the previous sections of this opinion that the circuit court did not err by summarily dismissing Davis’s claims, it follows that Davis did not meet the “good-cause” standard for obtaining postconviction discovery. Accordingly, the circuit court’s decision to deny post-conviction discovery was correct.
VIL
Finally, Davis argues that this Court should reverse the circuit court’s order because, he says, the circuit court adopted a proposed order that was submitted by the State that is “nearly identical to the State’s Answer and Motion to Dismiss .... ” (Davis’s brief, at 142.) Davis claims that the circuit court’s order “contains the ‘adversarial zeal’ of an advocate’s pleading” and was “ ‘not a product of [the circuit court’s] independent judgment.’” (Davis’s brief, at 142-44, quoting Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d -, - (Ala.2011).)
The Alabama Supreme Court addressed this issue in Ex parte Ingram, 51 So.3d 1119, 1122 (Ala.2010), and noted:
“[T]he general rule is that, where a trial court does in fact adopt the proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court. In Dobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000), the Court of Criminal Appeals stated:
“““While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.’ ” ’
“805 So.2d at 741 (quoting other cases; emphasis added).”
In Ingram, the circuit court’s order stated that “ ‘this Court presided over Ingram’s capital murder trial and personally observed the performance of both lawyers throughout Ingram’s trial and sentencing.’” 51 So.3d at 1123 (emphasis omitted). However, the Alabama Supreme Court noted that the judge who presided over Ingram’s Rule 32 petition was not the same judge who presided over his trial. Therefore, the court found that
“the patently erroneous nature of the statements regarding the trial judge’s ‘personal knowledge’ and observations of Ingram’s capital-murder trial undermines any confidence that the trial court’s findings of fact and conclusions of law are the product of the trial judge’s independent judgment and that the June 8 order reflects the findings and conclusions of that judge.”
Ingram, 51 So.3d at 1125. The circuit court’s order in the present case does not contain such “patently erroneous” errors like the order in Ingram.
Davis also compares his case to Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d -, - (Ala.2011). However, in Scott, the Alabama Supreme Court held that “because the trial court adopted verbatim the State’s answer as its order, the order is infected with the same adversarial zeal of the State’s counsel as is the answer.” We have reviewed the State’s response, as well as the circuit court’s order dismissing Davis’s petition, and have found none of the “adversarial zeal” that was described in Scott. In fact, Davis does not identify any specific portions of the circuit court’s order that he believes contains such *449 “adversarial zeal,” nor does he allege that any portions are clearly erroneous. Instead, he merely points to two typographical errors that appear in both the State’s proposed order and the circuit court’s order. In Scott, the Alabama Supreme Court stated: “We do not consider the few typographical errors at issue here, by themselves, as sufficient evidence upon which to base a conclusion that the trial court’s order is not a product of the trial court’s independent judgment.” — So.3d at -. Accordingly, we hold that the circuit court did not commit reversible error by adopting the State’s proposed order as its own.
For the foregoing reasons, the judgment of the circuit court is affirmed.
APPLICATION FOR REHEARING OVERRULED; OPINION OF AUGUST 30, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
MADDOX, Special Judge,[11] concurs specially as to Section II; KELLUM, J., concurs in part and concurs in the result, with opinion; WELCH and JOINER, JJ., concur in part and dissent in part, with opinions; WINDOM, P.J., recuses herself.

. Section 13Á-5-42, Ala.Code 1975, provides: "A defendant who is indicted for a capital offense may plead guilty to it, but the state must in any event prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in-determining whether the state has met that burden of proof. The guilty plea *419 shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence. A defendant convicted of a capital offense after pleading guilty to it shall be sentenced according to the provisions of Section 13A-5~43(d).”

. Because Davis does not raise' any issues regarding the extended procedural history of the underlying proceedings, we find it unnecessary to recite that history.

. “Rl” denotes the record on appeal from Davis v. State, 740 So.2d 1115 (Ala.Crim.App.1998). This Court may take judicial notice of its own records. Hull v. State, 607 So.2d 369 (Ala.Crim.App.1992).

. Rule 32.9(d), Ala. R.Crim. P., provides that, if an evidentiary hearing is held, a circuit court "shall make specific findings of fact related to each material issue of fact presented."-

. This general rule is subject to exceptions not applicable here. See, e.g., Ex parte Clemons, 55 So.3d 348 (Ala.2007).

. Davis did not raise any issues in his Rule 32 petition specifically challenging the trial court’s jury instructions.

. Section 13A-3-2(c), Ala.Code 1975, deals with involuntary intoxication.

. "S" denotes the sentencing order that is contained in ‘‘Supplement Two" to the record on appeal from Davis v. State, 740 So.2d 1115 (Ala.Crim.App.1998).

. Exhibits 27 through 32 were prior felony convictions offered by the State to disprove Davis’s mitigation evidence.

. The circuit court held that, under State v. Martin, 4 So.3d 1196, 1202 (Ala.Crim.App.2008), Davis was entitled to access the exhibits that were ádmitted during his trial because those exhibits were, public records. Accordingly, the circuit court held that no action was required on its part in order for Davis to access those exhibits. Thus, its denial applied only to items (1) through (5) in Davis's motion.